KALEVA-NORMAN-DICKSON SCHOOL DISTRICT NO. 6, COUNTIES OF MANISTEE, LAKE & MASON v KALEVA-NORMAN-DICKSON SCHOOL TEACHERS' ASSOCIATION

Docket No. 55813. Argued March 6, 1975 (Calendar No. 15).—Decided April 7, 1975.

Joy Urka, a member of the Kaleva-Norman-Dickson School Teachers' Association, was a certified probationary teacher under contract with the Kaleva-Norman-Dickson School District for the 1971–1972 school year. In March 1972 she was notified in writing that her contract would not be renewed. She filed a grievance asserting that non-renewal of her contract violated the collective bargaining agreement between the teachers' association and the school board. She was not satisfied with the resolution of her grievance and the union demanded arbitration pursuant to the agreement. The board refused to submit to arbitration and sought injunctive relief. The Manistee Circuit Court, Charles A. Wickens, J., found that Urka's claim was not arbitrable under the agreement and entered a permanent injunction. The Court of Appeals, R. B. Burns, P. J., and Allen and O'Hara, JJ., affirmed (Docket No. 16897). Defendants appeal. *Held:*

1. The policy favoring arbitration of disputes arising under collective bargaining agreements, as enunciated in decisions of the Supreme Court of the United States construing the National Labor Relations Act, is appropriate for contracts entered into under the state's public employment relations act.

2. The question whether a dispute is arbitrable is for the court, but is confined to whether the party seeking arbitration is making a claim which on its face is governed by the contract. Urka's claim is not based on the teachers' tenure act but on the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arbitration and Award § 11.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1155, 1443.
[3] 48 Am Jur 2d, Labor and Labor Relations § 1246 *et seq.*
[4–7] 48 Am Jur 2d, Labor and Labor Relations § 1256.
[8] 48 Am Jur 2d, Labor and Labor Relations §§ 1201, 1202.
[9] 5 Am Jur 2d, Arbitration and Award § 1246.

collective bargaining agreement, and whether her claim is valid is "governed by the contract".

3. Absent an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim the matter should go to arbitration. The board did not specifically reserve from arbitration claims of the kind presented by Urka, and there is no evidence of an intent to exclude them from arbitration.

4. The burden is on the party who would exclude a matter from a general arbitration clause to do so expressly and explicitly.

52 Mich App 433; 217 NW2d 411 (1973) reversed.

1. ARBITRATION AND AWARD—CONTRACTS.

Arbitration is a matter of contract and a party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration.

2. LABOR RELATIONS—STATUTES—CONSTRUCTION—PUBLIC EMPLOYMENT RELATIONS ACT.

In construing the public employment relations act, the Supreme Court has frequently looked to decisions of the Federal courts which construe and apply the National Labor Relations Act (MCLA 423.201 *et seq.*).

3. LABOR RELATIONS—ARBITRATION—COLLECTIVE BARGAINING AGREEMENTS—PUBLIC EMPLOYMENT RELATIONS ACT.

A policy favoring arbitration of disputes arising under collective bargaining agreements is appropriate for contracts entered into under the public employment relations act (MCLA 423.201 *et seq.*).

4. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENTS—DISPUTES—ARBITRATION—QUESTION OF LAW.

Whether a dispute is arbitrable under a collective bargaining agreement is a question for the court, but the inquiry is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract; whether the party is right or wrong is a question of contract interpretation for the arbitrator.

5. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENTS—DISPUTES—ARBITRATION.

Absent an express provision in a collective bargaining agreement excluding a particular grievance from arbitration under the

arbitration clause, or the most forceful evidence of a purpose to exclude the claim, the matter should go to arbitration.

6. Arbitration and Award—Contracts—Interpretation.

In deciding whether a dispute involving an issue of contract interpretation is arbitrable, a court should guard against the temptation to make its own interpretation of the substantive provisions of the contract encompassing the merits of the dispute; if the parties have agreed that an arbitrator shall decide questions of contract interpretation, the merits of the dispute are for the arbitrator.

7. Labor Relations—Collective Bargaining Agreements—Disputes—Arbitration.

Where a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of a labor contract containing an arbitration clause, it is likely that the court has gone astray; the question for the court is not whether the one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct.

8. Labor Relations—Collective Bargaining Agreements—Grievances—Arbitration—Teachers.

A claim by a probationary teacher and her union that nonrenewal of her contract by a public school district violated a specific provision of the collective bargaining agreement between the union and the school district was a question for arbitration where such a claim was not specifically excluded from arbitration and it could not be said with positive assurance that the arbitration clause of the agreement was not susceptible of an interpretation that covered the claim.

9. Arbitration and Award—Burden.

The burden is on the party who would exclude a matter from a general arbitration clause to do so expressly and explicitly.

*Thrun, Maatsch & Nordberg* (by *Thomas J. Nordberg, W. Peter Doren,* and *Donald J. Bonato),* for plaintiff.

*Foster, Lindemer, Swift & Collins, P. C.* (by *James A. White* and *David W. McKeague),* for defendants.

.

LEVIN, J. The question concerns the extent of a court's inquiry when a party to a collective bargaining agreement containing an arbitration clause seeks to enjoin arbitration of a grievance involving an issue of contract interpretation on the ground that the dispute is not within the scope of the agreement to arbitrate.

Joy Urka, a member of the Kaleva-Norman-Dickson School Teachers' Association (the union), was a certified, probationary (nontenured) teacher under contract with the Kaleva-Norman-Dickson School District (the board) for the 1971–1972 school year. In March, 1972, pursuant to provisions of the teachers' tenure act,[1] she was notified in writing that her contract would not be renewed.

Urka filed a grievance asserting that non-renewal of her contract violated the collective bargaining agreement. Urka was not satisfied with the resolution of her grievance and the union demanded arbitration pursuant to a provision of the agreement.

The board refused to submit to arbitration and sought injunctive relief in the circuit court. That court found that Urka's claim was not arbitrable under the agreement and entered a permanent injunction.

The Court of Appeals affirmed. We reverse and dissolve the injunction barring arbitration.

I

Under the teachers' tenure act all teachers during the first two years of employment are on probation.[2] As probationary teachers, their services may be discontinued on written notice at "least 60

---

[1] MCLA 38.81–38.83; MSA 15.1981–15.1983.

[2] MCLA 38.81; MSA 15.1981.

days before the close of the school year".[3] The board timely gave such notice. It is not contended that the proposed termination of Urka's employment violates the teachers' tenure act.

It is, rather, the claim of the union and Urka that under the collective bargaining agreement the board limited its right under the act to discontinue the employment of a probationary teacher. The board counters that the right under the act not to renew the contract of a probationary teacher is explicitly reserved to the board under the provisions of the collective bargaining agreement.

All agree that the question of arbitrability is for a court.

Arbitration is a matter of contract.[4] A party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration.[5]

The collective bargaining agreement between the union and the board provides in pertinent part:

"ARTICLE XIV.

"Professional Grievance Procedure

"A. Any teacher, group of teachers or the Association believing that there has been a violation, misinterpretation or misapplication of any provision of this Agreement or any other provision of law except a statute[6] specifically establishing a procedure for redress relating to wages, hours, terms or conditions of employment, may file a written grievance * * * .

---

[3] MCLA 38.83; MSA 15.1983.

[4] *John Wiley & Sons v Livingston,* 376 US 543, 546–547; 84 S Ct 909; 11 L Ed 2d 898 (1964).

[5] Interest arbitration imposed by statute, *e.g.,* the policemen and firemen compulsory arbitration act, MCLA 423.231, *et seq.;* MSA 17.455(31), *et seq.,* is atypical.

[6] The briefs of the parties make no argument based on the exception for "a statute" and, accordingly, we do not speculate as to the meaning to be ascribed to this clause.

* * *

"E. If the Board, the aggrieved employee, and the Association shall be unable to resolve any grievance through mediation, and it shall involve an alleged violation of a specific article and section of this agreement, it may, within ten school days, after mediation has been exhausted, be appealed to arbitration. * * *

"The arbitrator shall have no power to alter, modify, add to, or subtract from the provisions of this agreement.

"His authority shall be limited to deciding whether a specific article and section of this agreement has been violated and shall be subject to, in all cases, the rights, responsibilities and authority of the parties under the Michigan General School Laws or any other national, state, county, district or local laws. The arbitrator shall not usurp the functions of the Board or the proper exercise of its judgment and discretion under law and this agreement.

"The decision of the arbitrator shall be final and binding."

"ARTICLE II.

"Board Rights

"A. The Board, on its own behalf and on behalf of the electors of the district, hereby retains and reserves unto itself without limitations, all powers, rights, authority, duties, and responsibilities conferred upon and vested in it by the laws and the Constitution of the State of Michigan, and of the United States, including, but without limiting the generality of the foregoing, the right: * * *

"2. To hire all employees and subject to the provisions of law, to determine their qualifications, and the conditions for their continued employment or their dismissal or demotion; and to promote, and transfer all such employees, except as hereinafter provided. * * *

"B. The exercise of the foregoing powers, right, authority, duties, and responsibilities by the Board, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and dis-

cretion in connection therewith shall be limited only by the specific and express terms hereof in conformance with the Constitution and Laws of the State of Michigan, and the Constitution and Laws of the United States.

"C. Nothing contained herein shall be considered to deny or restrict the Board of its rights, responsibilities, and authority under the Michigan General School Laws or any other national, state, county, district, or local laws or regulations as they pertain to education."

"ARTICLE XI.

"Teacher Evaluation

"A. Probationary teachers will be evaluated at least two times during each year and tenure teachers will be evaluated at least once during each year, by their Principal. All monitoring or observation of the work performance of a teacher shall be conducted openly. A written report shall be completed and signed by the Principal and the teacher. A copy of the evaluation is to be placed in the teacher's personal file, and a teacher may also confer with the Superintendent regarding his evaluation.

"B. Each teacher shall have the right, upon a written request to the administration, to review the contents of his own personal file other than confidential materials. A representative of the Association may, at the teacher's request, accompany the teacher in this review.

"C. No teacher shall be disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage without just cause."

The board's complaint in the circuit court alleged that when Urka was notified in writing that her services would be discontinued she was advised that her services were "not satisfactory".[7]

The union and Urka contend that the non-renewal of Urka's contract violated Art XI(C) of the

---

[7] *Cf. Munro v Elk Rapids Schools,* 385 Mich 618; 189 NW2d 224 (1971).

collective bargaining agreement[8] and that pursuant to Art XIV(E), there having occurred a failure to resolve a grievance involving the interpretation, application and an alleged violation of a specific article and section of the agreement, they are entitled to go to arbitration.

The board responds that Urka's claim is nonarbitrable under Art II where the board reserved to itself without limitation all powers, rights and authority conferred upon and vested in it by the laws of this state, including the right to "hire all employees" and to determine "the conditions for their continued employment or their dismissal or demotion", the exercise of which powers, rights and authorities "shall be limited only by the specific and express terms hereof" in conformance with the Constitution and laws of this state and the United States. The board would have a court decide that, by reason of Art II, non-renewal of a probationary teacher's contract does not violate Art XI(C) and that it did not agree to submit to arbitration a claim inconsistent with its rights under Art II.

II

This collective bargaining agreement was entered into in accordance with the public employment relations act (PERA).[9] In construing the provisions and ramifications of the PERA, this Court has frequently looked to decisions of the

[8] Urka's grievance also asserted that termination violated Art II(A) prohibiting discrimination against an employee by reason of union membership or activity or exercise of rights under the collective bargaining agreement—prohibitions paralleling §§ 9 and 10 of the public employment relations act (PERA) proscribing unfair labor practices. MCLA 423.209, 423.210; MSA 17.455(9), 17.455(10).

[9] MCLA 423.201, *et seq.;* MSA 17.455(1), *et seq.*

Federal courts which construe and apply the National Labor Relations Act.[10]

The policy favoring arbitration of disputes arising under collective bargaining agreements, as enunciated by the United States Supreme Court in the Steelworkers' Trilogy,[11] is appropriate for contracts entered into under the PERA.

In *United Steelworkers of America v American Manufacturing Co,* 363 US 564, 568; 80 S Ct 1343 4 L Ed 2d 1403 (1960), the Court said that while the question whether a dispute is arbitrable is for a court, the judicial inquiry "is confined to ascertaining whether the party seeking arbitration is making *a claim which on its face* is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." (Emphasis supplied.)

The union and Urka contend that "on its face" her *claim* is "governed by the contract", the collective bargaining agreement. The board contends that it is not asking the Court to interpret or apply any provision of the agreement because Urka's claim "on its face" is not governed by the agreement but by the reserved rights of the board, including its rights under the teachers' tenure act. Urka's *claim* is not based on the teachers' tenure act but on the collective bargaining agreement. Whether she has a valid *claim* is "governed by the contract".

---

[10] *See Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974); *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 127; 223 NW2d 283 (1974); *Michigan Employment Relations Commission v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974).

[11] *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960); *United Steelworkers of America v American Manufacturing Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960). *See* Symposium, *Arbitration and the Courts,* 58 Nw U L Rev 466 (1963).

In *United Steelworkers of America v Warrior &
Gulf Navigation Co,* 363 US 574, 582–583; 80 S Ct
1347; 4 L Ed 2d 1409 (1960), the collective bargain-
ing agreement provided for arbitration of differen-
ces concerning the meaning and application of
provisions of the contract except matters which
are "strictly a function of the management". The
Court held that, despite the "function of manage-
ment" reservation clause, the issue of contracting
out work formerly done by employees was arbitra-
ble. The Court said, "An order to arbitrate the
particular grievance should not be denied unless it
may be said with positive assurance that the *arbi-
tration clause* is not susceptible of an interpreta-
tion that covers the asserted dispute. Doubts
should be resolved in favor of coverage." (Empha-
sis supplied.) Absent an *"express provision* exclud-
ing [a] particular grievance from arbitration" or
the *"most forceful evidence* of a purpose to exclude
the claim", (emphasis supplied) the matter should
go to arbitration:

"Accordingly, 'strictly a function of management'
must be interpreted as referring only to that over
which the contract gives management complete control
and unfettered discretion. Respondent claims that the
contracting out of work falls within this category. Con-
tracting out work is the basis of many grievances; and
that type of claim is grist in the mills of the arbitrators.
A specific collective bargaining agreement may exclude
contracting out from the grievance procedure. Or a
written collateral agreement may make clear that con-
tracting out was not a matter for arbitration. In such a
case a grievance based solely on contracting out would
not be arbitrable. Here, however, there is no such
provision. Nor is there any showing that the parties
designed the phrase 'strictly a function of management'
to encompass any and all forms of contracting out. In
the absence of any express provision excluding a partic-
ular grievance from arbitration, we think only the most

forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *United Steelworkers of America v Warrior & Gulf Navigation Co, supra,* pp 584–585.

The board did not specifically reserve from arbitration claims arising under Art XI(C). There is no evidence, forceful or otherwise, of a purpose to "exclude" from arbitration claims based on Art XI(C).[12]

---

[12] *Compare International Association of Machinists v Howmet Corp,* 466 F2d 1249 (CA 9, 1972). In that case, Menasco Manufacturing Company purchased two California plants from Howmet Corp. Both Menasco and Howmet manufactured aircraft landing gear. Menasco decided to close one of Howmet's plants because it was operating at a substantial loss. Menasco and the union representing employees at that plant were unable to agree on severance and vacation pay, job transfer and preferential hiring at other Menasco plants and payments to the pension plan. The union demanded arbitration under an arbitration clause in the collective bargaining agreement which referred to arbitration any unsettled grievance "which involves the interpretation or application of this Agreement". Menasco refused to arbitrate.

In ordering Menasco to arbitrate the unsettled grievance, the Court said:

"Although arbitration is a matter of mutual agreement between the parties, and they may choose to exclude certain areas of contention from the arbitration process, the standard set by the Court for finding a dispute non-arbitrable is a strict one: There must be either an 'express provision excluding a particular grievance from arbitration' or 'the most forceful evidence of a purpose to exclude the claim from arbitration.' *[United Steelworkers of America v Warrior & Gulf Co,* 363 US 574, 585; 80 S Ct 1347; 4 L Ed 2d 1409 (1960)] Here, there is no such 'express provision.' Whether or not a particular dispute is *prima facie* covered by the agreement's arbitration procedure is a question for the court to decide, see *John Wiley & Sons v Livingston,* 376 US 543, 546–547; 84 S Ct 909; 11 L Ed 2d 898 (1964), and *Local Freight Drivers Local 208 v Braswell Motor Freight Lines, Inc,* 422 F2d 109, 112 (CA 9, 1970). The issue is therefore a simple one: is there

The circuit and appeals courts, asserting that Urka's claim "on its face" was not governed by the agreement, decided the merits of the dispute in concluding that the language "disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage" in an article of the agreement concerning "teacher evaluation" of both probationary and tenured teachers might not cover non-renewal of a probationary teacher's contract for the reason that her services had not been "satisfactory" and that a construction in favor of coverage was necessarily precluded by the management-rights provision although, in terms, that provision is limited by the "specific and express terms" of the collective bargaining agreement.

The agreement of the parties indeed includes a forceful reservation by the board of rights in certain matters. Arguably, in such a situation a court should have leeway to weigh the competing claims and determine whether the reservation of rights by the board, if not expressly, at least impliedly covers the disputed matter. That approach, however, gives to the court the task assigned to the arbitrator—namely, the interpretation and application of the contract.

In deciding whether a dispute involving an issue of contract interpretation is arbitrable, a court

forceful evidence of a purpose to exclude these grievances from arbitration so that the heavy presumption in favor of arbitration is overcome? We hold that there is not."

*Compare District 50, United Mine Workers v Chris-Craft Corp,* 385 F2d 946, 949 (CA 6, 1967), cited by the board, where a union unsuccessfully sought to arbitrate the dismissal of employees discharged for violating the no-strike provisions of the collective bargaining agreement. The labor agreement provided a grievance and arbitration procedure for disputes concerning discharge. However, the no-strike clause specifically stated that any violator of that provision would be subject to discharge and that "such action [a discharge for striking] may not be raised as a grievance under this agreement"..

should guard against the temptation to make its own interpretation of the substantive provisions of the contract encompassing the merits of the dispute. If the parties have agreed that an arbitrator shall decide questions of contract interpretation, the merits of the dispute are for the arbitrator.

Where a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of the contract, it is likely that the court has gone astray. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct.

Our holding is a most limited one. We intimate nothing about the possible merits of Urka's claim. It may well be that the construction placed on the agreement by the circuit and appeals courts is correct—non-renewal of Urka's contract did not violate Art XI(C) and was a right reserved to the board under Art II. But it may not be said "with positive assurance" that the *arbitration clause*— which covers alleged "violation, misinterpretation or misapplication of *any* provision" (emphasis supplied) of the agreement—is "not susceptible of an interpretation that covers" Urka's dispute. Whether the union's and Urka's contention that the non-renewal of her contract violates Art XI(C) is a correct interpretation and application of the agreement is a question for the arbitrator.

The rule promulgated by the United States Supreme Court puts the burden on the party who would exclude a matter from a general arbitration clause to do so expressly and explicitly. We adopt that rule.

We reverse the Court of Appeals and dissolve the injunction restraining arbitration of Urka's

grievance for the reason that Urka's claim does not pertain to a matter the parties specifically excluded from arbitration.

T. G. KAVANAGH, C. J., and T. M. KAVANAGH, SWAINSON, WILLIAMS, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with LEVIN, J.