DETROIT FEDERATION OF TEACHERS v DETROIT BOARD OF
EDUCATION

Docket No. 55643. Argued January 9, 1975 (Calendar No. 14).—De-
cided April 1, 1976.

The Detroit Federation of Teachers instituted a class-action pro-
ceeding for mandamus against the Detroit Board of Education
alleging that the board's practice of classifying certified teach-
ers as emergency substitutes in regular positions (ESRPs)
rather than probationary contract teachers was in direct viola-
tion of the School Code of 1955, MCLA 340.569; MSA 15.3569,
and worked hardships on the teachers so classified. The Wayne
Circuit Court, Horace W. Gilmore, J., issued an order of manda-
mus directing the board to give its own probationary contracts
to those qualified teachers who were filling regular teaching
positions on January 15, 1973. The Court of Appeals, Lesinski,
C. J., and R. B. Burns and Quinn, JJ., affirmed (Docket No.
16243). Plaintiffs appeal. *Held:*

1. The statute, MCLA 340.569; MSA 15.3569, is mandatory,
and the school board is required to enter into a written individ-
ual contract evidencing the employment relationship with each
"duly qualified" teacher in its employ.

2. The statute does not impose a legal duty on the board to
offer a teacher a particular kind of contract; the kind of
contract is to be determined by agreement of the parties.

3. The collective bargaining agreement between the board
and the union states the terms and conditions of teacher
employment and provides a procedure for resolving disputes
arising under the agreement; this is such a dispute. Whether
particular "ESRPs" were certified and filling regular positions,
and, if so, whether they were entitled to probationary contracts
should be resolved either by the parties themselves or through
the grievance procedure.

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Schools § 138 *et seq.*
[2–4] 48 Am Jur 2d, Labor Relations § 1911 *et seq.*
  68 Am Jur 2d, Schools §§ 131, 175.
  Union organization and activities of public employees, 31 ALR2d
  1142.

4. The circuit court erred in issuing an order of mandamus directing the kind of contract particular teachers would receive. The case is remanded to the circuit court for entry of a declaration of rights that each "duly qualified" teacher in the board's employ is entitled to a written individual contract evidencing the employment relationship, and for further proceedings if necessary.

Justice Williams, concurring in part and dissenting in part, agreed that the teachers have a right to written contracts, but would hold that all teachers who meet the requirements for a probationary teacher and who carry the responsibility associated with a probationary teacher have a right to a probationary contract, and that their rights may be established by the trial court.

50 Mich App 660; 213 NW2d 839 (1973) reversed.

### Opinion of the Court

1. Schools and School Districts—Teachers—Contracts—Statutes.

The provision of the School Code of 1955 that teachers' contracts shall be in writing is mandatory and a school board is required to enter into a written individual contract evidencing the employment relationship with each "duly qualified" teacher in its employ; however, the code does not impose a legal duty on the board to offer a teacher a particular kind of contract, and the kind of contract is to be determined by agreement of the parties (MCL 340.569).

2. Schools and School Districts—Teachers—Contracts—Collective Bargaining Agreement.

The School Code contemplates that the kind of contract each teacher receives from the school board is to be decided by agreement of the parties; where a collective bargaining spells out the terms and conditions of employment and governs the possible kinds of contracts the teachers may receive, the issue whether certain teachers are entitled to probationary contracts depends on the agreement of the parties.

3. Labor Relations—Collective Bargaining Agreements—Disputes—Grievance Procedure—Teachers—Contracts.

Whether certain teachers were entitled to receive probationary contracts from their school board pursuant to a collective bargaining agreement between the board and the teachers' union was a matter to be resolved either between the parties or through the grievance procedure in the agreement and not by a court, where the collective bargaining agreement provided that

contract disputes, including those concerning the interpretation of the agreement, were to be resolved through the grievance procedure, which culminated in binding arbitration.

Opinion Concurring in Part and Dissenting in Part

Williams, J.

See headnote 1.

4. Labor Relations—Collective Bargaining Agreements—Teachers—Contracts.

*Certain teachers who meet the requirements for a probationary teacher and who carry the responsibility associated with a probationary teacher are entitled to receive probationary contracts from their school board pursuant to a collective bargaining agreement between the board and the teachers' union and this right may properly be enforced by the courts although the contract also provides for a grievance procedure supplementary to remedies afforded by law.*

*Marston, Sachs, O'Connell, Nunn & Fried* for plaintiffs.

*Riley & Roumell* (by *George T. Roumell, Jr., Thomas M. J. Hathaway, John F. Brady,* and *Gregory P. Theokas)* for defendant.

Levin, J. Section 569 of the School Code provides that "[t]he board of every district shall hire and contract with such duly qualified teachers as may be required. All contracts with teachers shall be in writing * * * ".[1]

For a number of years preceding 1972, the Detroit Board of Education employed tenured and probationary teachers, who worked with written, individual contracts, and substitute teachers, including emergency substitutes in regular positions (ESRPs), who worked without written, individual contracts.

In February, 1972, the board adopted a resolu-

[1] MCLA 340.569; MSA 15.3569.

tion which provided that all new teaching positions would be filled by ESRPs.[2] No probationary appointments were made during the 1972–73 school year.

This class action was commenced by the union in January, 1973 in behalf of teachers working without a written, individual contract.

The parties agree that under § 569 of the School Code "duly qualified" teachers are entitled to written, individual contracts evidencing the employment relationship. They do not agree on the kind of contract particular teachers were entitled to receive or what is the appropriate forum and procedure for resolution of disputes concerning the contract a particular teacher should receive.

The union contends that all teachers in regular teaching positions who are not on "continuing" (tenure) contracts are entitled to "probationary" contracts and that the circuit court should decide whether a particular teacher, although called an "ESRP", is so entitled.

The board contends that the kind of contract a teacher receives should be determined by agreement of the parties and, if they cannot agree, the dispute should be resolved through the grievance arbitration procedure provided in the collective bargaining agreement.

The circuit court adopted the union's position and ordered the board to enter into probationary contracts with all certified[3] teachers assigned to teach in regular positions. The order for mandamus provides a procedure for resolution by the court of disputes regarding the kind of contract a

---

[2] "Teacher assignments and all other assignments of new or returning personnel shall be made as ESRP assignments, not as regular or probationary appointments."

[3] The union does not seek probationary contracts for substitute teachers who are not certified.

teacher should receive. The Court of Appeals affirmed.[4] We reverse.

We agree with the circuit court and the Court of Appeals that the language of § 569 is "mandatory" and the board is required to enter into a written, individual contract evidencing the employment relationship with each "duly qualified" teacher in its employ. We conclude, however, that (1) § 569 does not impose a legal duty on the board to offer a teacher a particular kind of contract; (2) under § 569 the kind of contract is to be determined by agreement of the parties; (3) the collective bargaining agreement between the board and the union states the terms and conditions of teacher employment and provides a procedure for resolving disputes arising under that agreement; (4) this is such a dispute; and (5) the circuit court erred in issuing a writ of mandamus directing the kind of contract particular teachers would receive.[5]

---

[4] *Detroit Federation of Teachers v Detroit Board of Education*, 50 Mich App 660; 213 NW2d 839 (1973).

The Court of Appeals relied on the teachers' tenure act, MCLA 38.71, *et seq.;* MSA 15.1971, *et seq.*, in affirming the circuit court.

The Court of Appeals suggested that the board's policy of hiring ESRPs without written, individual contracts could enable the board to circumvent the tenure act and deny ESRPs "the possibility of tenure guaranteed by the tenure act". *Detroit Federation of Teachers v Detroit Board of Education, supra*, p 663.

The tenure act provides that "[a]fter the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act". MCLA 38.91; MSA 15.1991.

The "probationary period" is not defined in terms of a particular contract, but as "the first 2 school years of employment". MCLA 38.81; MSA 15.1981. Whether a school board may properly withhold tenure status from a teacher called an ESRP who worked without a written, individual contract is not an issue in this case.

[5] The union sought a writ of mandamus compelling the board to enter "into written contracts with the plaintiffs and the members of plaintiffs' class, for the 1972–73 school year", and to "[g]rant plaintiffs such other and further relief as shall be just and proper".

Mandamus is an extraordinary remedy to compel performance of a

Before teachers unionized, the terms of a teacher's employment were set forth in a contract between the teacher and the board embodying their agreement. Few individual teachers, however, had any real bargaining power and the contract terms were frequently imposed by the board rather than negotiated by the parties.

Now the union and the board negotiate a master collective bargaining agreement which determines the rights of the individual teachers in the bargaining unit. Individual teachers are not even nominally involved in the negotiation process; they sign contracts which are derivative of the collective bargaining agreement.

Three categories of teachers are recognized in the collective bargaining agreement negotiated by the parties in this case: tenured, probationary, and substitute. Substitute teachers are further classified as Emergency Substitutes, Class 1 and 2, and ESRPs, Class 3 and 4.[6]

Under the collective bargaining agreement, complaints "involving the work situation, or that there

---

clear legal duty. Here the duty is to provide a written, individual contract, not a particular kind of contract.

[6] Neither the criteria for qualification as a tenured, probationary or substitute teacher nor the particular duties of each category are specified in the agreement.

The rights and benefits accorded teachers in each category vary.

An ESRP's assignment may be "closed out" upon two days' notice. Master Agreement, Art XII, § G. Under the teachers' tenure act, a probationary teacher is entitled to be "notified in writing at least 60 days before the close of the school year that his services will be discontinued". MCLA 38.83; MSA 15.1983. "Generally, probationary teachers with less than two years' seniority will not be transferred." Art XII, § G. There is no similar limitation on the discretion of the board to transfer ESRPs.

Group life insurance is provided to "appointed employees". To qualify, ESRPs must "have worked in this classification for two years immediately preceding their death or retirement". Art XVI, § B(6)(a).

"A teacher returning at the expiration of leave, has priority over a newly hired teacher, ES, ESV, and ESRP." Art XV, § G(1).

has been a deviation from, or a misinterpretation or misapplication of a practice or policy; or that there has been a violation, misinterpretation, or misapplication of any provision of" the master agreement[7] are to be resolved through the grievance procedure provided in the agreement.

The five-step procedure, culminating in binding arbitration, is mandatory,[8] but not exclusive. Under the agreement, grievance is "supplementary or cumulative to * * * procedures or remedies afforded to any teacher by law".[9]

The union contends that the teachers properly eschewed the grievance procedure and sought court enforcement of their rights under the School Code in this proceeding, a remedy afforded "by law".

We agree that the circuit court properly entertained this action and declared, pursuant to the School Code, that the board shall enter into a written, individual contract with each "duly qualified" teacher in its employ. But that court erred when it directed the board to enter into probationary contracts with certain teachers and provided for hearings regarding the status of other teachers.[10]

---

[7] Art XXI, § A.

[8] "Problems and grievances shall be presented and adjusted in accordance with the following procedures: * * * ." Art XXI, § B.

[9] "The grievance procedures provided in this Agreement shall be supplementary or cumulative to, rather than exclusive of, any procedures or remedies afforded to any teacher by law." Art XXI, § F.

[10] "IT IS ORDERED that the defendant, The Board of Education of the School District of the City of Detroit * * * [is] hereby ordered to comply with said Section 569 of the School Code of 1955, as amended, and, specifically, to enter into individual, written contracts as attached hereto (being the defendant's standard probationary contract form), with all certificated teachers (whether or not heretofore denominated 'emergency substitutes in regular positions' (ESRP's), and not already on continuing, annual or probationary contracts) who, on or about January 15, 1973, were assigned to teach in a regular position (i.e., other than as a temporary replacement for another teacher on

The right protected by the code is the right to a written contract evidencing the employment relationship, not to a particular kind of contract. The code contemplates that the kind of contract each teacher receives is to be decided by agreement of the parties. In this case, the representative of the plaintiff class, the union, entered into a collective bargaining agreement with the defendant school district. That agreement spells out the terms and conditions of employment and governs the possible kinds of contracts—tenured, probationary and substitute—teachers may receive. The issue whether certain teachers, called ESRPs, are entitled to probationary contracts pursuant to the collective bargaining agreement depends on the agreement of the parties.

The interpretation of agreements is manifestly appropriate business for a court. Here, however, the parties have agreed and the collective bargaining agreement provides that contract disputes, including those concerning the interpretation of the agreement, are to be resolved through the grievance procedure.

In *Kaleva-Norman-Dickson School District v Kaleva-Norman-Dickson School Teachers' Association,* 393 Mich 583; 227 NW2d 500 (1975), we recently reiterated the judicial policy favoring arbitration of disputes where the collective bargaining agreement provides for arbitration as the final step of a grievance procedure.

Neither the School Code nor other law requires that there be a judicial determination of the kind

illness or temporary disability leave), for the school year 1972–73, effective for each teacher the first date of his assignment; * * * and further provided that in the event a dispute arises as to inclusion of any teacher in said class, the court reserves jurisdiction to determine as necessary the identity and individual effective dates of persons in the said class * * * ."

of contract a teacher who is a member of a collective bargaining unit shall receive.

The determination whether particular "ESRPs" were certified and filling regular positions, and, if so, whether they were entitled to probationary contracts should be resolved by the parties themselves or through the grievance procedure.

Our limited holding that the circuit court is not the proper forum for determination of the job classification and kind of contract to which these teachers are entitled in no way portends any view of the merits of their cause.

The case is remanded to the circuit court for entry of a declaration of rights that each "duly qualified" teacher in the board's employ is entitled to a written, individual contract evidencing the employment relationship. The circuit court may hold this case in abeyance pending determination, either by agreement of the parties or through the grievance procedure, of the kind of contract to which each teacher is entitled.[11] If any teacher is aggrieved by the job classification and contract offered by the board, he may file a grievance. After resolution of any dispute regarding the kind of contract to which a teacher is entitled, the circuit court may, if necessary, order the board to provide a written, individual contract of the kind awarded in arbitration.

Reversed and remanded.

---

[11] Whatever kind of contract these teachers receive, they will be derivative contracts governed by the terms of the master collective bargaining agreement. It is, therefore, of no consequence that forms of derivative contracts for the several classifications of substitute teachers may not have been drafted. The drafting of such forms does not require further bargaining as the terms and conditions of a substitute teacher's employment have been agreed upon and are embodied in the collective bargaining agreement.

Kavanagh, C. J., and Coleman and Fitzgerald, JJ., concurred with Levin, J.

Lindemer and Ryan, JJ., took no part in the decision of this case.

Williams, J. *(concurring in part, dissenting in part)*. The present action is a class action suit brought by the Detroit Federation of Teachers for an injunction or mandamus to compel compliance. by the Detroit School Board with § 569 of the School Code, MCLA 340.569; MSA 15.3569 which provides in pertinent part that:

"The board of every district shall hire and contract with such duly qualified teachers as may be required. All contracts with teachers shall be in writing * * * ."

Two issues are posed in the case. First, do the teachers bringing this action have a right to a written contract under § 569 of the School Code? We conclude that these teachers do in fact have such a right.

Second, do these teachers, or any segment of them have a right to a probationary contract? We conclude that all teachers who meet the requirements for a probationary teacher and who carry the responsibility associated with a probationary teacher have a right to a probationary contract, and their individual rights as established under these guidelines may be established by the trial court.

## I—Facts

On February 8, 1972, the Detroit School Board adopted a resolution stating that henceforth "Teaching assignments and all other assignments of new or returning personnel shall be made as

ESRP *[i.e.,* emergency substitute in a regular position] assignments and not as regular or probationary assignments".

As a result, many full-time teachers for the 1972–73 academic year were labeled ESRPs, were denied a written contract, and were subject to termination on 48 hours notice. In contrast, probationary teachers had in the past received a written contract which by its terms required sixty days notice before termination.[1]

On January 2, 1973, DFT filed this class action suit in Wayne County Circuit Court seeking mandamus or an injunction to compel the Detroit Board's compliance with § 569 of the School Code, through the issuance of written contracts to teachers who had been designated ESRPs.

Judge Gilmore issued a mandamus order on January 24, 1973 to compel compliance with § 569 as follows:

"IT IS ORDERED that the defendant, the Board of Education of the School District of the City of Detroit, its agents, servants, employees, successors, assigns, attorneys and all persons acting in concert with them and all persons to whom knowledge of these premises may

---

[1] Other consequences of being designated an ESRP rather than a probationary teacher included the following:
1. Probationary teachers with less than two years seniority generally will not be transferred under the collective bargaining agreement, CBA, Art XII, § G at 23.
2. Probationary teachers are entitled to immediate life insurance benefits, while ESRPs are not entitled to life insurance benefits unless they have worked in this classification for two years immediately preceding their death or retirement. CBA, Art XVI, § B(6) at 42.
3. Probationary teachers are allowed credit on the salary schedule for up to eight years of outside teaching experience. CBA, Appendix, Art 2 at 59.
4. A probationary teacher has greater priority upon returning from leave. CBA, Art XV, § G(1) at 41.
5. Two years satisfactory teaching as a probationary teacher entitle the teacher to tenure, MCLA 38.81; MSA 15.1981.

come, be and they are hereby ordered to comply with said Section 569 of the School Code of 1955, as amended, and, specifically, to *enter into individual, written contracts as* attached hereto *(being the defendant's standard probationary contract form), with all certificated teachers* (whether or not heretofore denominated 'emergency substitutes in regular positions' (ESRPs), and not already on continuing, annual or probationary contracts) *who,* on or about January 15, 1973, *were assigned to teach in a regular position (i.e., other than as a temporary replacement for another teacher on illness or temporary disability leave),* for the school year 1972–73, effective for each teacher the first date of his assignment; provided that nothing herein contained shall be in derogation of the rights of any teacher on account of tenure to an annual or continuing contract for the 1972–73 school year; and further provided that in the event a dispute arises as to inclusion of any teacher in said class, the Court reserves jurisdiction to determine as necessary the identity and individual effective dates of persons in the said class; provided that the rights of such persons shall retrospectively attach as otherwise provided under the foregoing provisions of this Order.

"The Court further reserves jurisdiction to render further and ancillary orders in implementation of the foregoing." (Emphasis added.)

Thus, under the trial court order, all teachers who had been designated ESRPs obtained the right to a written probationary contract unless they served as a temporary replacement for another teacher on illness or temporary disability leave.

On November 29, 1973, the Court of Appeals, in an opinion written by Chief Judge Lesinski, affirmed the trial court's order.

On June 27, 1974, we granted leave to appeal.

## II—Discussion

The threshold question in the instant case is

whether the complaining teachers, though labeled ESRPs as a budget-cutting effort by the Detroit board, are entitled to a written contract under § 569 of the School Code.

Clearly, these teachers have such a right to a written contract under the clear language of § 569. The statute mandates that each school board enter into a written contract with such "duly qualified teachers as may be required".

The teachers here are "duly qualified", for Judge Gilmore's order is applicable only to teachers who are certified. Moreover, they are "required" once the Detroit board has determined to hire them to fulfill full teaching responsibilities. Therefore, by the terms of the statute, these teachers are entitled to written contracts.

The Detroit board argues, however, that even if the teachers encompassed in Judge Gilmore's order are entitled to written contracts, they are not all entitled to probationary contracts specifically.

My Brother Levin basically concurs with this view, stating that § 569 does not impose a legal duty to offer a teacher a particular kind of contract. He would leave the form of written contract to be granted to the complaining teachers to the agreement of the parties, and notes that the collective bargaining agreement between DFT and the Detroit board provides a procedure for resolving disputes involving the work situation. CBA, Art XXI, § A.

While I agree with my Brother Levin in concluding that § 569 of the School Code alone does not mandate any particular form of contract, this is not the end of our inquiry.

Where the complaining teachers meet all the requirements for probationary teachers established by the board itself and carry the responsibilities of

a probationary teacher, those teachers are entitled to receive probationary contracts and the courts can properly order such action. Such is the case not because § 569 by itself requires probationary contracts for these teachers, but because pursuant thereto the collective bargaining agreement between the parties so requires.

Appellant Detroit School Board itself acknowledges that:

" * * * a collective bargaining agreement, unlike a commercial contract, consists not only of written contractual language but also the past practice of the parties." (Appellant's Brief, p 36.)

See also *John Wiley & Sons, Inc v Livingston,* 376 US 543, 549–550; 84 S Ct 909; 11 L Ed 2d 898 (1964); *United States Steel Workers of America v Warrior & Gulf Navigation Co,* 363 US 574, 578–579; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).

Certain requirements or criteria for probationary teachers have been established through past practice, as appellant's admissions indicate:

1) The teachers must be on the Detroit board eligibility list;[2]
2) The teacher must be certified in the subject matter which he or she teaches;

---

[2] The eligibility list requirements are:

"1. A bachelor's degree from a college or university accredited, at the time the degree was granted, by the North Central Association of Colleges and Secondary Schools, or an equivalent agency.

"2. A Michigan State Provisional, Permanent, or Life Certificate.

"3. A satisfactory college or university record with adequate and up-to-date preparation in the field of specialization.

"4. A satisfactory record of supervised or directed teaching or other teaching experience.

"5. Status as a native or naturalized citizen of the United States, or an individual who has filed his declaration of intention to become a citizen."

3) The teacher must go through a screening process.

These criteria have thus become part of the collective bargaining agreement, and teachers who have met the requirements and who carry the responsibility of a probationary teacher are entitled under the agreement to a probationary contract.

This conclusion is further supported by the fact that the Detroit board has acknowledged the right of 306 teachers formerly labeled ESRPs to probationary contracts because they met the requirements and carried the responsibilities of a probationary teacher. As to those teachers, the Detroit board no longer disputes the propriety of Judge Gilmore's order.

There remain, however, some 995 teachers whose probationary contracts are in dispute. An analysis of the record indicates that these teachers, though all labeled ESRPs, held three types of positions or responsibilities:

1) Approximately 565 ESRPs were assigned to substitute for tenured or probationary teachers who take a leave of absence from their Detroit board funded regular positions to work in a Federal or state funded position;

2) Approximately 265 ESRPs served in positions funded by the Federal or state government;

3) Approximately 175 ESRPs served as relief teachers for tenured or probationary teachers who are making use of the one hour of preparation time allowed them each day.

A number of the teachers in these three groups were improperly granted probationary contracts under the trial court order. Some of them did not meet the requirements or criteria of a probationary teacher as discussed above. For example, ap-

proximately 330 ESRPs were not on the Detroit board's eligibility list.

Moreover, it is arguable that teachers in the first category did not hold the kind of position associated with the status of probationary teachers. These teachers in effect, it is argued, substituted for tenured or probationary teachers who were working in specially funded programs. Their position could be of indefinite duration, for the continuance of Federal or state funds for these special programs can be uncertain, and the tenured and probationary teachers who taught in these programs had been promised that if funds terminated or if they simply desired to end their participation in the program, their regular positions would be made available to them.

For similar reasons it is argued that members of the second group of teachers are likewise not entitled to a probationary contract.

Members of the third group of teachers, who are otherwise qualified, however, are clearly entitled to a probationary contract, for the following reasons. First, these positions are funded in the same manner as tenured and probationary teachers, not being dependent on special Federal and state grants.

Second, these positions are not temporary in nature or uncertain in duration. Under the collective bargaining agreement, tenured and probationary teachers are allowed an hour of preparation time each day, and so long as this agreement remains in effect, there will be a need for these relief teachers to teach.

Third, unless these teachers are granted probationary status, and made subject to continuing evaluation, as probationary teachers, they may be unfairly deprived of tenure.

Under the teachers tenure act, MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.,* qualified teachers are entitled to tenure upon reappointment after a two-year probationary period. MCLA 38.81; MSA 15.1981.[3] During this period, the work of the probationary teacher is evaluated. MCLA 38.83; MSA 15.1983. If these relief teachers are not granted probationary contracts and are not evaluated as probationary teachers, they may work a full day each school day for the two-year period of time without earning the opportunity to gain tenure.

Thus, teachers who are in this class, who meet the requirements for probationary teachers noted above, are entitled to a probationary contract, and the trial court and Court of Appeals properly enforced this right.

There remains only the question of the method to be used to resolve further questions raised here between the teachers and the Detroit board regarding the first two classes.

The nature of the contract to be granted ESRPs not clearly entitled to probationary contracts is a matter for negotiation between the parties under their bargaining agreement.

However, the rights of individual teachers to probationary contracts under the guidelines of this opinion is a matter best resolved by the continuing jurisdiction of the trial court.

While the collective bargaining agreement between the parties provides for a grievance procedure, this procedure was intended to be "supplementary to * * * remedies afforded to any teacher by law". Art XXI, § F. The teachers here have a proper remedy at law which is properly enforced by the trial court.

---

[3] MCLA 38.82; MSA 15.1982 allows a third year of probation in some circumstances.

### III—CONCLUSION

We hold that the teachers here bringing suit are entitled to written contracts under § 569 of the School Code, and that those teachers who meet the requirements for probationary teachers established by the Detroit board and who fill the responsibilities of a probationary teacher as described above, are entitled to probationary contracts.

This case is remanded to the circuit court for a declaration of rights under this opinion.