LANTING v JENISON PUBLIC SCHOOLS

Docket No. 49099. Submitted June 5, 1980, at Grand Rapids.—Decided January 22, 1981. Leave to appeal applied for.

Janice Lanting brought an action against the Jenison Public Schools and the Board of Education of the Jenison Public Schools following the finding by an arbitrator in a grievance proceeding related to her employment by defendant board that the collective bargaining agreement governing the grievance procedure deprived him of the jurisdiction to decide the merits of the dispute. Defendants moved for summary judgment, which motion was granted, Ottawa Circuit Court, Calvin L. Bosman, J. Plaintiff appeals. *Held:*

The collective bargaining agreement contained forceful evidence of a purpose to exclude from arbitration matters covered under the teachers' tenure act including the nonrenewal of the contracts of probationary teachers. The trial court properly upheld the finding of the arbitrator that the agreement deprived him of jurisdiction to determine such matters.

Affirmed.

1. SCHOOLS — TEACHERS — PUBLIC EMPLOYMENT RELATIONS ACT — COLLECTIVE BARGAINING — STATUTES.

Tenured and nontenured teachers have the right to bargain collectively regarding terms and conditions of employment under the public employment relations act (MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

REFERENCES FOR POINTS IN HEADNOTES

[1] 48A Am Jur 2d, Labor and Labor Relations § 1770.

[2] 68 Am Jur 2d, Schools § 187.
Sufficiency of notice of intention to discharge teacher, or not to renew contract, under statutes requiring such notice. 92 ALR2d 751.

[3] 48A Am Jur 2d, Labor and Labor Relations § 1764.

[4] 5 Am Jur 2d, Arbitration and Award § 29.
48A Am Jur 2d, Labor and Labor Relations § 1856.

[5] 5 Am Jur 2d, Arbitration and Award § 15.
48A Am Jur 2d, Labor and Labor Relations § 1853.

2. SCHOOLS — SCHOOL BOARDS — PROBATIONARY TEACHERS — TEACH-
   ERS' TENURE ACT — STATUTES.

 A school board has the power not to renew the contract of a
probationary teacher upon providing notice as required by the
teachers' tenure act, but may agree to limit that right (MCL
38.81-38.83; MSA 15.1981-15.1983).

3. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — STAT-
   UTES.

 The public employment relations act is the dominant law regulat-
ing public employee labor relations (MCL 423.201 *et seq.;* MSA
17.455[1] *et seq.).*

4. ARBITRATION — CONTRACTS — ARBITRABILITY OF ISSUES — JUDICIAL
   INQUIRY.

 A question regarding the arbitrability of an issue under a con-
tract is for a court to decide; arbitration is a matter of contract,
and a party to a contract cannot be required to arbitrate an
issue which he has not agreed to submit to arbitration.

5. ARBITRATION — CONTRACTS — ARBITRABILITY OF ISSUES — JUDICIAL
   INQUIRY — ARBITRATORS' INTERPRETATIONS.

 Judicial inquiry regarding the arbitrability of an issue under a
contract is confined to ascertaining whether the party seeking
arbitration is making a claim which, on its face, is governed by
the contract, and whether the moving party is right or wrong is
a question of contract interpretation for the arbitrator.

*Foster, Swift, Collins & Coey, P.C.* (by *Lynwood
E. Beekman),* for plaintiff.

*Thrun, Maatsch & Nordberg, P.C.* (by *Joe D.
Mosier* and *Harry J. Zeliff),* for defendant.

Before: R. B. BURNS, P.J., and MACKENZIE and
J. T. KALLMAN,* JJ.

MACKENZIE, J. This case involves the construc-
tion of a collective bargaining agreement relative
to the nonrenewal of a nontenured teacher.

 Plaintiff, Janice Lanting, was a certified proba-
tionary (nontenured) teacher employed by defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant Board of Education of the Jenison Public Schools (the board) to teach special education during the 1975-1976 and 1976-1977 school years. On March 28, 1977, the board voted not to extend her a contract for the following year and afforded plaintiff the requisite notice under the teachers' tenure act, MCL 38.81-38.83; MSA 15.1981-15.1983.

As a member of the Jenison Education Association (the union), plaintiff filed a written grievance on April 19, 1977, under the collective bargaining agreement between the union and defendant, alleging that her nonrenewal breached a provision in the agreement providing that "[n]o teacher shall be disciplined without just cause". Following the denial of the grievance by defendant at each step of the procedure, plaintiff made a demand for arbitration with the American Arbitration Association pursuant to Article XXIV of the collective bargaining agreement. On March 2, 1978, the arbitrator held that the agreement deprived him of jurisdiction to decide the merits of the dispute.

Plaintiff filed the complaint in this action on June 27, 1978, alleging in two counts that (1) the arbitrator had erroneously held that he was without jurisdiction under the agreement to decide the dispute and that the matter should be remanded back to the arbitrator and that (2), if arbitration be denied, the court should find that the board's action violated the collective bargaining agreement and order the board to tender plaintiff a full-time teaching contract for the 1978-1979 school year with the rights and privileges incident thereto (i.e., tenure), expunge from plaintiff's file all reference to defendant's action in discharging plaintiff, and pay damages for the breach, including back pay and all lost fringe benefits.

On June 15, 1979, the trial court granted defen-

dants' motion for summary judgment under GCR 1963, 117.2(1), pursuant to its findings in its opinion that the arbitrator correctly held that the agreement deprived him of jurisdiction to determine matters covered under the teachers' tenure act and that plaintiff was not entitled to a "just cause" determination under that statute. *Lipka v Brown City Community Schools (On Rehearing)*, 403 Mich 554; 271 NW2d 771 (1978). Upon plaintiff's request for reconsideration, the court issued a subsequent opinion finding that plaintiff's contention that she was entitled to a "just cause" determination of the board's action required reading that provision out of context and was contrary to the intent of the agreement. The court further found that, even if that had been the parties' intent, defendant Jenison Public Schools could not contract with the union to alter the procedure for nonretention of probationary teachers because such a contract would be against the statutory procedure and the public policy of the state. Plaintiff appeals as of right the trial court's determination that plaintiff did not state a claim upon which relief could be granted in Count II of her complaint.[1]

It is well established that tenured, as well as nontenured, teachers have the right under the public employment relations act (the PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* to bargain collectively regarding terms and conditions of employment. *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616; 227 NW2d 736 (1975). Despite the power of a school board not to renew the contract of a probationary teacher upon providing notice as required by the teachers' tenure act, *Lipka, supra,* a school board may agree to

---

[1] Plaintiff does not appeal from the court's denial of Count I requesting the matter be remanded for arbitration.

limit its right to nonrenewal of probationary teachers. *Kaleva-Norman-Dickson School Dist No 6, Counties of Manistee, Lake & Mason v Kaleva-Norman-Dickson School Teachers Ass'n,* 393 Mich 583; 227 NW2d 500 (1975). Further support for this conclusion is derived from the interpretation by our Supreme Court that the PERA is the dominant law which is to govern " 'notwithstanding the provisions of any other law' ". *Rockwell, supra,* 629.

The issue for our consideration, therefore, is whether it was the intent of the parties, as manifested in the provisions of the collective bargaining agreement, to limit defendant's right to fail to renew the contract of a probationary teacher for "just cause" only, subject to compulsory arbitration. In *Kaleva-Norman-Dickson, supra,* 587, it was recognized that the question of arbitrability is for the court:

> "Arbitration is a matter of contract. A party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration." (Footnotes omitted.)

However, "the judicial inquiry 'is confined to ascertaining whether the party seeking arbitration is making *a claim which on its face* is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator' ". (Emphasis supplied.) *Id.,* 591, citing *United Steel Workers of America v American Mfg Co,* 363 US 564, 580; 80 S Ct 1343; 4 L Ed 2d 1403 (1960).

The pertinent provisions of the collective bargaining agreement in question read as follows:

"ARTICLE I

"Recognition

"The Board agrees to recognize the Association as the sole and exclusive bargaining representative for all professional teaching staff under contract, exclusive of substitute teachers and of Administrative personnel, and any other person engaged fifty percent (50%) of the time in the direct administration and supervision of professional personnel. The term 'teacher' when used hereinafter in the Agreement shall refer to all professional employees represented by the Association in the bargaining or negotiating unit, as above defined, and references to male teachers shall include female teachers."

"ARTICLE II

"Association and Teacher Rights

"A. Pursuant to the Michigan Public Employment Relations Act, the Board hereby agrees that every employee of the Board shall have the right freely to organize, join and support the Association for the purposes of engaging in collective bargaining or negotiations.

"B. Nothing contained herein shall be construed to deny or restrict to any teacher rights he may have under the Michigan General School Laws. The rights granted to teachers hereunder shall be deemed to be in addition to those provided elsewhere."

*   *   *

"ARTICLE III

"Management Rights and Responsibilities

"A. The Board, on its own behalf and on behalf of the electors of the district, hereby retains and reserves unto itself, without limitation, all power, rights, authority, duties and responsibilities conferred upon and vested in it by the laws and the Constitution of the State of Michigan, and of the United States, including, but without limiting the generality of the foregoing, the right to the executive management and administrative control of the school system and its properties and facilities and the activities of its employees. To hire all employees and, subject to the provisions of law, to determine their qualifications and the conditions for their continued employment, or their dismissal or de-

motion; and to promote and transfer all such employees. To establish grades and courses of instruction; to establish special programs; and to provide for athletic, recreational and social events for students, all as deemed necessary or advisable by the Board and to decide upon the means and methods of instruction, the selection of textbooks and other teaching materials, and the use of teaching aids of every kind and nature. To determine class schedules, the hours of instruction, and the duties, responsibilities and assignments of teachers and other employees with respect thereto, and with respect to administrative and non-teaching activities.

"B. The exercise of the foregoing powers, rights, authority, duties and responsibilities by the Board, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and discretion in connection therewith shall be limited only by the specific and express terms of this Agreement and then only to the extent such specific and express terms hereof are in conformance with the Constitution and Laws of the United States. It is further recognized that the Board, in meeting such responsibilities and, in exercising its powers and rights, acts through its administrative staff."

\* \* \*

"ARTICLE XIV

"Teacher Evaluation and Progress

"The parties recognize the importance and value of a procedure for assisting and evaluating the progress and success of both newly employed and experienced personnel. Therefore, to this end, the following procedure has been agreed to in an effort to accomplish the goals.

"A. Procedure for evaluation is found in Administrative Policy No. 4117.

"B. A 'teaching coach' shall be assigned to every probationary teacher upon entrance of the teacher into the system. The 'teaching coach' shall be a tenure teacher and shall be engaged in teaching within the same building or discipline as the probationary teacher. It shall be the duty of the teaching coach to assist and counsel the probationary teacher in acclimating to the teaching profession and the school system.

"C. Each teacher shall have the right, upon request, to review the contents of his own personal file. A representative of the Association may, at the teacher's request, accompany the teacher in this review. The teacher has a right to file a response to any material therein, and said response shall become a part of said file."

"ARTICLE XV

"Professional Behavior

"A. The Association recognizes that abuses of sick leave or other leaves, chronic tardiness or absence, willful deficiencies in professional performance, or other violations of discipline by a teacher reflect adversely upon the teaching profession and create undesirable conditions in the school building. The Board, in recognition of the concept of progressive correction, shall notify the teacher in writing of alleged delinquencies, indicate expected correction, and indicate a reasonable period for correction. Alleged breaches of discipline shall be promptly reported to the offending teacher. The Association will use its best efforts to correct breaches of professional behavior by any teacher.

"B. A teacher shall at all times be entitled to have present a representative of the Association when he is being reprimanded, warned or disciplined for any infraction of rules or delinquency in professional performance. When a request for such representation is made, no action shall be taken with respect to the teacher until such representative of the Association is present. When a situation demands prompt attention, the Association shall provide a representative within three (3) hours of the request. Failure to provide a representative within such a time period will waive rights to such representation.

"C. No teacher shall be disciplined without just cause."

* * *

"ARTIICLE XXIV

"Professional Grievance Procedure

"A grievance is defined as an alleged violation of a specific article or section of this Agreement.

"A. Any teacher or group of teachers may file a

grievance and it shall be processed in the following manner:

"1. An informal discussion of the violation of the Agreement shall be held with the principal within five (5) school days of the alleged violation. The teacher may request an authorized member of the Association to be in attendance.

"2. If a solution is not reached by an informal discussion with the principal, a written copy of the grievance shall be given to the principal within five (5) school days of the informal discussion.

"3. All written grievances must be signed by the aggrieved party.

"4. The principal must answer the grievance in writing within four (4) school days of the receipt of the written grievance.

"5. If the aggrieved party is not satisfied with the disposition of the case, the grievance shall be transmitted to the superintendent within ten (10) days. Within seven (7) days after receiving the complaint, the superintendent shall meet with the Association on the grievance and shall indicate his disposition of the grievance in writing within five (5) school days of such meeting and shall forward a copy of the disposition to the Association and to the Board of Education.

"6. If the aggrieved is not satisfied with the disposition of the grievance by the superintendent, the grievance shall be transmitted to the Board by filing a copy with the Secretary of the Board within ten (10) school days. The Board within fifteen (15) school days will hold a hearing on the grievance. Disposition of the grievance in writing shall be made no later than seven (7) school days thereafter. A copy of such disposition shall be furnished to the Association.

"7. If the aggrieved is not satisfied with the disposition of the grievance by the Board, or if no disposition has been made within the period above provided, within five (5) days the grievance may be submitted to arbitration before an impartial arbitrator. If the parties cannot agree as to the arbitrator within five (5) calendar days from the notification date that arbitration will be pursued, he shall be selected by the American Arbitra-

tion Association in accord with its rules which shall likewise govern the arbitration proceeding. The Board and the Association shall not be permitted to assert in such arbitration proceedings any ground or to rely on any evidence not previously disclosed to the other party. The arbitrator shall have no power to alter, add to, or subtract from the terms of this Agreement, *or deal with matters covered under the Teacher Tenure Act.* Both parties agree to be bound by the award of the arbitrator and agree that judgment thereon may be entered in any court of competent jurisdiction." (Emphasis supplied.)

In her complaint, plaintiff alleges that she was unjustifiably "discharged" by defendant board due to its conclusion that her work was unsatisfactory in the areas of organizing, planning, dependability, and responsibility and that the board's actions contravened Article XV(C) of the collective bargaining agreement providing that "[n]o teacher shall be disciplined without just cause". We agree with the trial judge that such an interpretation of that clause would require reading it completely out of context. Article XV, entitled "Professional Behavior", specifically deals with the *discipline* of a teacher for "any infraction of rules or delinquency in professional performance", including "abuses of sick leave or other leaves, chronic tardiness or absence, willful deficiencies in professional performance, or other violations of discipline * * *". Had plaintiff been disciplined or discharged for such conduct, we would not question her right to a "just cause" determination and arbitration.

Unlike the contract provision in *Kaleva-Norman-Dickson,* the "just cause" provision herein does not appear in the article covering "Teacher Evaluation and Progress" of both tenured and probationary teachers, *i.e.,* Article XIV. Under

that article, there is no requirement that the board's determination of whether to renew a probationary teacher's contract be subject to any objective standard whatsoever. Given this distinction, we do not believe the parties intended the term "discipline" in Article XV to encompass situations involving the *nonrenewal* of probationary teachers. The term "nonrenewal", without more, does not connote disciplinary action. Under the teachers' tenure act, a school board has the discretion to fail to renew the contract of a probationary teacher "whether based on good, bad or unstated reasons". *Lipka, supra,* 560. Assuming the truth of the reasons stated in plaintiff's complaint for defendant board's action in failing to renew her contract, we find that she has not sufficiently alleged a violation of Article XV.

As further support for our conclusion, we rely, as did the arbitrator and the trial judge, on Article XXIV(A)(7), concerning the "Professional Grievance Procedure". That section unequivocally states that "[t]he arbitrator shall have no power to alter, add to, or subtract from the terms of this Agreement, *or deal with matters covered under the Teacher Tenure Act".* (Emphasis supplied.) As noted earlier, the teachers' tenure act clearly delineates the procedure for nonrenewal of probationary teachers. MCL 38.81-38.83; MSA 15.1981-15.1983. The collective bargaining agreement in *Kaleva-Norman-Dickson, supra,* did not contain a similar clause. Under the standard announced in *Kaleva-Norman-Dickson,* we conclude that the agreement contained forceful evidence of a purpose to exclude from arbitration matters covered under the teachers' tenure act, *i.e.,* the nonrenewal of the contracts of probationary teachers. Therefore, the language in Article III, wherein the

board reserved the right "[t]o hire all employees and, subject to the provisions of law, to determine their qualifications and the conditions for their continued employment, or their dismissal or demotion", should be given effect.

Affirmed. Costs to defendants.