DETROIT POLICE OFFICERS ASSOCIATION v CITY OF DETROIT

Docket No. 54631. Submitted December 15, 1981, at Detroit.—Decided
    March 17, 1982. Leave to appeal applied for.

    In 1963, the Detroit police department obtained a computer to
    assist in the compilation and analysis of law enforcement data.
    Although the program was initially staffed by both police
    officers and civilian employees, eventually the unit evolved into
    one comprised solely of officers. The officers performing the
    data processing work were paid the same rate as regular
    patrolmen. However, to provide some upward mobility within
    the data processing classification, the position of Senior Police
    Data Processing Programmer was created in September of 1967
    by a Detroit Common Council resolution. In 1972, Common
    Council approved the upgrading of three additional program-
    mers to Senior Police Data Processing Programmers. The re-
    classification established four senior programmers, who were
    paid according to the prevailing rate for lieutenants in the
    police department but who were, nonetheless, prohibited from
    holding a rank above that of police officer. These senior pro-
    grammers were represented by the Detroit Police Officers Asso-
    ciation (DPOA). In 1977, a discrepancy in the number of
    lieutenants in the department surfaced. The city had classified
    the senior programmers as lieutenants because of their pay
    rate and included them in the Recognition of Association
    section of the 1974-1977 collective bargaining agreement with
    the Detroit Police Lieutenants and Sergeants Association
    (DPLSA). The DPLSA thereafter filed a grievance demanding
    removal of the senior programmer officers and assignment of
    DPLSA lieutenants to those positions. The grievance resulted
    in an arbitration award in favor of the DPLSA. Pursuant to a
    court order enforcing that award, defendant removed the in-
    cumbent senior programmers from that classification and re-
    turned them to their former pay scale as regular police officers.
    The DPOA filed a grievance under the terms of its collective-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arbitration and Award §§ 15, 146, 147.
    48A Am Jur 2d, Labor and Labor Relations §§ 1984-1988.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 899, 900.

bargaining agreement alleging that the agreement was violated by the reclassification of the officers. The arbitration panel concluded that the reclassification did violate the collective-bargaining agreement between the city and the DPOA. It ordered the city to restore the three officers to their prior positions as senior programmers and to make the officers whole for their loss of earnings and any related benefits. The DPOA filed suit in the Wayne Circuit Court to enforce the award. The city petitioned the Employment Relations Commission to resolve the matter by determining which organization was the proper bargaining representative for the senior programmers. The parties agreed to adjourn plaintiff's suit to enforce the second arbitration award while the MERC decision was pending. MERC awarded the representation rights for the senior programmers to the DPOA. Apparently, the issue of whether the displaced programmers were entitled to back pay was not raised during the proceedings and it was not mentioned in the MERC opinion. Subsequent to the MERC decision, the circuit court order enforcing the first arbitration award, that in favor of the DPLSA, was vacated for lack of jurisdiction. Thereafter, the trial court granted summary judgment in favor of the city, refusing to enforce the DPOA arbitration award on the ground that MERC had primary jurisdiction over the matter, Victor J. Baum, J. Plaintiff appealed. *Held:*

1. Judicial review of the arbitration award is limited to whether the award was within the authority conferred upon the arbitrator by the collective-bargaining agreement, and, once substantive arbitrability is determined and no situation is presented which comes within the recognized exceptions to the rule of judicial deference to the decision of the arbitrator, judicial review effectively ceases.

2. The back pay award was within the authority conferred on the arbitrator by the collective-bargaining agreement.

Reversed and remanded with instructions.

1. ARBITRATION — APPEAL — LABOR RELATIONS.

The merits of a grievance or an arbitration award are irrelevant when a court is asked to enforce an arbitration agreement or award thereunder; judicial review is limited to whether the award was within the authority conferred upon the arbitrator by the collective-bargaining agreement, and, once substantive arbitrability is determined and no situation is presented which comes within the recognized exceptions to the rule of judicial deference to the decision of the arbitrator, judicial review effectively ceases.

2. LABOR RELATIONS — PUBLIC EMPLOYEES — REPRESENTATIONAL DIS-
   PUTES.
   Public employee labor representation disputes between conflicting
   labor organizations are to be resolved by the Employment
   Relations Commission (MCL 423.213; MSA 17.455[13]).

*Gregory, Van Lopik, Moore & Jaekle* (by *Kenneth M. Gonko*), for plaintiff on appeal.

*Sylvester Delaney,* Deputy Corporation Counsel, and *William Dietrich* and *Frank W. Jackson,* Assistants Corporation Counsel, for defendant.

Before: N. J. KAUFMAN, P.J., and BASHARA and R. I. COOPER,* JJ.

N. J. KAUFMAN, P.J. Plaintiff Detroit Police Officers Association (DPOA) commenced this action in circuit court to enforce an arbitrator's award of back pay for three of its member police officers. Plaintiff appeals as of right from a grant of summary judgment in favor of defendant. We reverse.

In 1963, the Detroit police department obtained a computer to assist in the compilation and analysis of law enforcement data. Although the program was initially staffed by both sworn police officers and civilian employees, eventually the unit evolved into one comprised solely of sworn officers. The officers performing the data processing work were paid the same rate as regular patrolmen. However, to provide some upward mobility within the data processing classification, the position of Senior Police Data Processing Programmer was created in September of 1967 by a Detroit Common Council resolution. On September 1, 1972, Common Council approved the upgrading of three additional programmers to Senior Police Data Processing Programmers. The reclassification estab-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

lished four senior programmers, who were paid according to the prevailing rate for lieutenants in the police department but who were, nonetheless, prohibited from holding a rank above that of police officer. These senior programmers were represented by the DPOA.

In 1977, when layoffs were pending in the police department, a discrepancy in the number of lieutenants in the department surfaced. Apparently by inadvertence or mistake, the city had classified the senior programmers as lieutenants because of their pay rate and included them in the Recognition of Association section of the 1974-1977 collective-bargaining agreement with the Detroit Police Lieutenants and Sergeants Association (DPLSA). The DPLSA thereafter filed a grievance demanding removal of the senior programmer officers and assignment of those positions to DPLSA lieutenants. The grievance resulted in an arbitration award in favor of the DPLSA. Pursuant to a court order enforcing that award, defendant, on May 23, 1979, removed the incumbent senior programmers from that classification and returned them to their former pay scale as regular police officers.

On June 18, 1979, plaintiff DPOA filed a grievance under the terms of its collective-bargaining agreement alleging that the agreement was violated by the reclassification of the officers. The second grievance proceeding culminated in the arbitration award that is the subject matter of this suit. The arbitration panel concluded that the reclassification did indeed violate the collective-bargaining agreement between the city and the DPOA. It ordered the city to restore the three officers to their prior positions as senior programmers and to make the officers whole for their loss of earnings and any related benefits. The DPOA filed suit to enforce the award.

The city, in a quandary over which arbitration award it should obey, petitioned the Employment Relations Commission (MERC) to resolve the matter by determining which organization was the proper bargaining representative for the senior programmers. The parties agreed to adjourn plaintiff's suit to enforce the second arbitration award while the MERC decision was pending. On July 25, 1980, MERC awarded the representation rights for the senior programmers to the DPOA. Apparently, the issue of whether the displaced programmers were entitled to back pay was not raised during the proceedings and it was not mentioned in the MERC opinion. Subsequent to the MERC decision, the circuit court order enforcing the first arbitration award, that in favor of the DPLSA, was vacated for lack of jurisdiction. Thereafter, the trial court in the instant suit granted summary judgment in favor of the city, refusing to enforce the DPOA arbitration award on the ground that MERC had primary jurisdiction over the matter.

The issue before this Court is whether the arbitration panel exceeded its authority in making the back pay award. Judicial review in this area is, of course, limited in scope.

"Questions concerning the scope of judicial review of arbitrability and the awards made by arbitrators in labor disputes have been almost a plague on both state and Federal courts for years, but the eminently proper attitude that we have taken is one of 'hands off'. The party that ends up holding the short end of an arbitrator's award may try desperately to fit the facts within the narrow doorway to the courts, but the judicial policy is clear. In the *Steelworkers* trilogy, the United States Supreme Court held that the merits of either the grievance or the arbitration award are *irrelevant* when a Federal court is asked to enforce an arbitration agreement or award thereunder. Judicial review is

limited to whether the award 'draws its essence' from the contract, whether the award was within the authority conferred upon the arbitrator by the collective bargaining agreement. Once substantive arbitrability is determined (as it was in the court below) judicial review effectively ceases. The fact that an arbitrator's interpretation of a contract is wrong is irrelevant." *Ferndale Education Ass'n v School Dist for City of Ferndale #1,* 67 Mich App 637, 642-643; 242 NW2d 478 (1976) (footnote omitted; emphasis in original).

Our review of this matter convinces us that the back pay award was within the authority conferred by the collective-bargaining agreement. Section 6 of that agreement gave the arbitration panel power over "the interpretation, application, or enforcement of the specific articles and sections" of the contract. The back pay dispute between the city and the DPOA arose out of § 36-A of the collective-bargaining agreement, which reads:

"Wages, hours and conditions of employment legally in effect at the execution of this agreement shall, except as improved herein, be maintained during the term of this agreement. No employee shall suffer a reduction in such benefits as a consequence of the execution of this agreement."

Defendant correctly points out that the arbitrator's award was contingent upon an initial finding that the DPOA was the correct bargaining unit for the senior programmer positions. By statute, representational conflicts are to be resolved by MERC. MCL 423.213; MSA 17.455(13).[1] Defendant argues

[1] "The commission shall decide in each case, to insure public employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining as provided in section 9e of Act No. 176 of the Public Acts of 1939, as amended,

that because this prefatory question should have gone to MERC, the arbitration panel lacked any jurisdiction over the dispute. This problem was anticipated in the opinion of the arbitration umpire, which acknowledged that the conflict between the DPOA and DPLSA would have to be resolved in a separate forum. The opinion noted that the function of the arbitration panel was limited to interpreting and applying the DPOA contract. Thus, although the panel concluded that the DPOA was the appropriate bargaining unit, it was plainly aware that the representational question could only be conclusively resolved by a forum before which the city and both unions were represented.

Ultimately, MERC, faced only with the representational issue and the question of whether the displaced DPOA programmers should be returned to their jobs, concluded that the DPOA was the bargaining unit appropriate to the positions. Plainly, the collective-bargaining agreement between the city and DPOA was applicable to the back pay dispute. Therefore, while the arbitration panel was without authority to resolve the representational conflict, its interpretation of the DPOA contract remains valid on the issue of back pay for the displaced programmers,[2] an issue not decided

being section 423.93 of the Michigan Compiled Laws: Provided, That in any fire department, or any department in whole or part engaged in, or having the responsibility of, fire fighting, no person subordinate to a fire commission, fire commissioner, safety director, or other similar administrative agency or administrator, shall be deemed to be a supervisor."

[2] We do not believe that *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663; 293 NW2d 278 (1980), requires a contrary result. There, the Court held that MERC could not defer to arbitration the resolution of public statutory grievance disputes after its jurisdiction had been invoked. Here, the parties agree that MERC's decision on representation takes precedence over the decisions of both arbitration panels. The dispute here is over that portion of the arbitration award not preempted by MERC, which involved interpretation of the collective-

by MERC. *Cf. Local 259, UAW v Kellogg Pontiac Sales Corp,* 392 F Supp 1044 (SD NY, 1975). We perceive no conflict between the back pay award and MERC decision in this matter.

We believe defendant's argument that the DPOA might have raised the back pay issue before MERC is now beside the point. Either party could have raised the issue.[3] However, by now voiding the back pay award we would only add to the convoluted procedural history of this case by forcing the parties to return to MERC or rearbitrate the issue. The city itself did not petition MERC until it was faced with the two conflicting arbitration awards, even though it has steadfastly maintained that the matter is a representational dispute.

The judgment of the trial court is reversed and the matter remanded for entry of summary judgment enforcing the arbitration award in favor of plaintiff DPOA.

---

bargaining agreement. Moreover, this case does not involve *pre-arbitral* deferral by MERC.

[3] Pursuant to MCL 423.216(b); MSA 17.455(16)(b) MERC is empowered to reinstate workers with or without back pay as a remedy for unfair labor practices. *Cf. Senior Accountants, Analysts and Appraisers Ass'n v Detroit,* 399 Mich 449; 249 NW2d 121 (1976).