CITY OF SAGINAW v MICHIGAN LAW ENFORCEMENT UNION, TEAMSTERS LOCAL 129

Docket No. 69705. Submitted May 1, 1984, at Lansing.—Decided August 7, 1984.

The City of Saginaw had in 1981 a collective-bargaining agreement with the Michigan Law Enforcement Union, Teamsters Local 129, which represented all full-time sworn police other than the police chief, captains, lieutenants and sergeants employed by the City of Saginaw. The collective-bargaining agreement established the normal workweek as being five consecutive days with two consecutive days off and provided that overtime was to be paid for any work in excess of 8 hours in any 24-hour period or for any work in excess of 40 hours in any weekly pay period. The agreement further established the basic shifts for patrol officers and provided that those basic shift hours could not be changed except by mutual agreement between the employer and the union. The agreement provided that any layoffs "shall be made under the provisions of Act 78 of the Public Acts of 1935", which act provides that when for reasons of economy it is necessary to reduce the paid members of the police force it shall be accomplished by suspending the most recent appointees.

In 1981, the City of Saginaw encountered serious problems in balancing its budget. In June, 1981, the city informed the union that it was instituting a program whereby each officer would be given one unpaid day off each month. The union filed a grievance protesting the program, contending that the reduction in hours was a violation of the collective-bargaining agreement. The union sought binding arbitration pursuant to the provisions of the collective-bargaining agreement. During the pendency of the arbitration proceeding, the Saginaw County Prosecutor brought in Saginaw Circuit Court an action on relation of

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 48A Am Jur 2d, Labor and Labor Relations §§ 1773, 2636, 2637, 2650.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 48 ALR3d 885.

the union against the city, seeking that the city be enjoined from implementing the unpaid-day-off program on the basis that the program was in violation of the provisions of 1935 PA 78. In that action the city moved for summary judgment on the basis that the prosecutor had failed to state a cause of action. The trial court, Robert S. Gilbert, J., granted the motion and dismissed the prosecutor's action, finding that there was no violation of the provisions of 1935 PA 78, because, although the number of hours worked by the police officers had been reduced, there had been no reduction in the number of paid members on the police force.

The arbitrator thereafter held that the city had violated the express provisions of the collective-bargaining agreement by requiring the union members to forfeit one paid workday each month and ordered the city to cease and desist from the unpaid-day-off program and to pay each member of the union for each workday lost since the implementation of the program. The arbitrator based his finding on his conclusion that requiring bargaining unit members to forfeit one workday per month was a reduction of paid members for reason of economy within the meaning of 1935 PA 78 and, accordingly, could only be properly accomplished by the statutory means of laying off the last hired members.

The city thereafter brought in Saginaw Circuit Court an action to vacate the arbitration award, alleging that the issue of the unpaid-day-off program was not arbitrable under the terms of the contract, that the arbitrator exceeded his jurisdiction, that the award demonstrated a manifest disregard of the law, that the award violated strong public policy and that the court's prior decision in the prosecutor's action was binding on the parties in the arbitration proceedings. The trial court, Robert S. Gilbert, J., on finding that the issue was arbitrable, that the arbitrator did not exceed his jurisdiction, that the award did not demonstrate a manifest disregard of the law or did not violate strong public policy and that there was no showing of mistake or fraud, confirmed the award. Plaintiff appeals. Defendant cross-appealed. The cross-appeal was dismissed on stipulation of the parties. *Held:*

1. The trial court correctly recognized that its judicial review of the arbitration award was essentially limited to determining whether the award was within the authority conferred upon the arbitrator by the collective-bargaining agreement.

2. Since the provisions of 1935 PA 78 were incorporated into the collective-bargaining agreement, the arbitrator was empow-

ered to interpret the statutory language as a matter of contract interpretation.

3. The record does not support the contention that the union waived arbitration. On the contrary, the record supports the conclusion that the union elected to proceed with arbitration in accordance with the provisions of the collective-bargaining agreement.

4. The issue presented to the arbitrator was a proper subject for arbitration under the collective-bargaining agreement, since the claim on its face was clearly governed by the contract.

5. The arbitrator was not bound by the circuit court's prior interpretation of the statute, since the statutory language, for the purpose of the arbitration proceeding, must be treated as a contractual provision and interpreted in the context of the other provisions in the collective-bargaining agreement.

6. The arbitration award was not violative of any strong public policy relative to public safety and welfare in that the award itself did not mandate work-force reductions.

7. The arbitration proceedings were not barred on res judicata grounds by reason of the circuit court proceedings pursuant to the prosecutor's complaint.

Affirmed.

1. ARBITRATION — LABOR RELATIONS — JUDICIAL REVIEW — AUTHORITY OF ARBITRATOR.

The merits of a grievance or an arbitration award are irrelevant when a court is asked to enforce an arbitration agreement or award thereunder; judicial review is limited to whether the award was within the authority conferred upon the arbitrator by the collective-bargaining agreement; once substantive arbitrability is determined judicial review effectively ceases.

2. ARBITRATION — CONTRACTS — STATUTES.

The incorporation into a contract by the parties to that contract of the terms of a statute acts to empower an arbitrator in arbitration proceedings brought pursuant to the contract to interpret the statute, since interpretation of the statute becomes integrated with the interpretation of the contract.

3. ARBITRATION — ARBITRABLE QUESTIONS — AUTHORITY OF ARBITRATOR — PRESERVING QUESTION.

The participation of an employer in an arbitration proceeding brought pursuant to the provisions of a labor-management agreement without raising in the arbitration hearing the issue of the substantive arbitrability of the dispute may constitute a

waiver of a right of the employer to challenge after the arbitration award the arbitrability of the dispute.

4. ARBITRATION — ARBITRABLE QUESTIONS.

A claim which on its face is a matter governed by a contract is a proper matter for arbitration where the contract in question has an arbitration provision.

5. ARBITRATION — CONTRACTS — STATUTES — JUDICIAL CONSTRUCTION.

An arbitrator, in interpreting the meaning of statutory language which has been incorporated by reference into the provisions of the contract from which the arbitration proceedings arise, is not bound by a prior judicial interpretation of the statutory language, since the statutory language must be interpreted in the context of the other provisions of the contract.

6. ARBITRATION — AWARD — PUBLIC POLICY.

A court may decline to enforce an arbitration award where the award itself mandates some action which is contrary to public policy: the fact that the enforcement of an arbitration award against a public employer may require the public employer to undertake, because of fiscal problems, actions which could not be directly required by an arbitration award does not make a proper arbitration award contrary to public policy.

*von Briesen & Redmon, S.C.* (by *Steven B. Ryneki*), and *Otto W. Brandt, Jr.,* City Attorney, for plaintiff.

*Lippitt, Lyons & Whitefield* (by *John A. Lyons*), for defendant.

Before: SHEPHERD, P.J., and CYNAR and S. D. BORMAN,* JJ.

PER CURIAM. Plaintiff, City of Saginaw, and defendant, Michigan Law Enforcement Union, Teamsters Local 129, are parties to a collective-bargaining agreement. Defendant is the exclusive bargaining representative for all full-time, sworn police officers (excluding the chief of police, captains, lieutenants, and sergeants) employed by

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff. Plaintiff appeals as of right from a court order confirming an arbitration award which granted defendant's grievance and held plaintiff in violation of the parties' collective-bargaining agreement by requiring bargaining-unit members to forfeit one paid workday each month.[1]

In 1981, the City of Saginaw encountered serious problems in balancing the fiscal 1981-1982 budget. Even after elimination of 91 employment positions, the city found it necessary to further reduce salary costs. Therefore, in May, 1981, the city proposed the "unpaid-day-off" program as a way to generate a reduction in salary costs. Under this program, the work hours of all city employees would be reduced by one day each month. In a letter dated May 15, 1981, the city informed defendant's president of the serious financial problems facing the city and that it was necessary to reduce salary costs in defendant's bargaining unit by $215,364. The city proposed the unpaid-day-off program as a method to effectuate the salary reduction and invited defendant to suggest viable alternatives. A number of meetings were held, at which various proposals, such as outside employment and early retirement, were discussed. the city determined that implementation of the proposed unpaid-day-off program was the best alternative to reduce salary costs. On June 23, 1981, the city sent all bargaining-unit employees a letter notifying them that their hours of employment would be reduced pursuant to the implementation of the unpaid-day-off program. Defendant, contending that the reduction of hours was a violation of the collective-bargaining agreement, filed a grievance protesting the program.

---

[1] Defendant initially filed a claim of cross-appeal with this Court. However, pursuant to the parties' stipulation, an order was entered March 26, 1984, dismissing the cross-appeal.

Article III of the bargaining agreement includes among the employer's retained prerogatives the right to lay off and schedule the work of bargaining-unit members, except where limited by express provisions of the agreement. Article VI, § 1, establishes the normal workweek as five consecutive days on duty and two consecutive days off duty. Article VI, § 3, provides that an employee is entitled to overtime pay if the employee works more than 8 hours in any 24-hour period or more than 40 hours in any weekly pay period. Article VI, § 5, which establishes the basic shifts for patrol officers, states: "The basic shift hours shall not be changed except by mutual agreement of Employer or Union except in the event of emergencies." Members of the bargaining unit are paid on an annual-salary basis. The salary schedules, attached to the agreement, result from statutory arbitration pursuant to MCL 423.238; MSA 17.455(38).

Article VII mandates that layoffs "shall be made under the provisions of Act 78 of the Public Acts of 1935, as amended". "Act 78", as referred to by the parties, is the firemen and policemen civil service act, MCL 38.501 *et seq.;* MSA 5.3351 *et seq.* Section 14 of this act provides in part:

"If for any reasons of economy it shall be deemed necessary by a city, village or municipality to reduce the number of paid members of any fire or police department, then said municipality shall follow the following procedure:

"Such removals shall be accomplished by suspending in numerical order commencing with the last man appointed to the fire or police department, all recent appointees to said fire or police department until such reductions shall have been accomplished: Provided further, however, That in event the said fire or police department shall again be increased in numbers to the strength existing prior to such reductions of members

the said firemen or policemen suspended last under the terms of this act shall be first reinstated before any new appointments to said fire or police department shall be made." MCL 38.514; MSA 5.3364.

Finally, Article XIII provides for a multi-step grievance procedure culminating in final and binding arbitration for "matters involving the interpretation, application or enforcement of the terms" of the agreement. Under Step 4, the grievant must elect whether to proceed under Act 78 or to binding arbitration under Step 5. Section 3 of Article XIII states that "the arbitrator shall have no power to modify or detract from the terms" of the agreement.

The parties' dispute over the unpaid-day-off program was submitted to arbitration in accordance with Article XIII, Step 5, of the collective-bargaining agreement. Arbitrator Allan Walt was selected by the parties through the Federal Mediation and Conciliation Service and the hearing was held on September 16, 1981. In an opinion and award dated October 23, 1981, the arbitrator held:

"The grievance is granted.
"The employer violated the express provisions of Article VII of the collective-bargaining agreement in requiring bargaining-unit members to forfeit one paid workday each month.
"The employer shall cease and desist from such scheduling, and each member of the bargaining unit forthwith shall be paid 8 hours pay at the appropriate contractual rate for each workday lost since implementation of the program on July 1, 1981."

The arbitrator found that a one-day-per-month reduction in work for each member of the bargaining unit was tantamount to a work-force reduc-

tion. The arbitrator based this finding on the "submitted evidence" which established that a loss of one work day per month per man resulted in the equivalent of 5.22 officers lost to the department. Thus, while the total number of officers in the department would remain the same, it followed that there would be fewer officers scheduled for work each month, at least on some shifts. The arbitrator concluded that, by requiring bargaining-unit members to forfeit one paid workday each month, the city had reduced the number of paid members of the police department, for reasons of economy, within the meaning of § 14 of Act 78. Therefore, the city had violated Article VII of the collective-bargaining agreement by failing to follow the procedure mandated by § 14 of Act 78, *i.e.:* "[R]emovals shall be accomplished by suspending in numerical order commencing with the last man appointed to the * * * police department, all re-cent appointees to said * * * police department until such reduction shall have been accomplished." MCL 38.514; MSA 5.3364.

The arbitrator also concluded that other provisions of the collective-bargaining agreement supported his findings that the unpaid day off was in fact a reduction in the work force. Article VI, § 1, established that the normal work week was five consecutive days on duty and two consecutive days off. The unpaid day off would create a variance in the normal workweek and avoidance of that variance could only be accomplished by following the procedure of Act 78. The unpaid workday would also effectuate losses in Article VII, § 3, overtime pay, a unilateral change in the basic shift provisions of Article VII, § 5, and a unilateral reduction of the annual salary reflected in Article XXIV, § 1, Appendix A. Thus, the arbitrator granted the relief requested in defendant's grievance.

Meanwhile, during the pendency of the arbitration proceeding, Saginaw County Prosecutor Robert L. Kaczmarek filed a complaint in Saginaw Circuit Court for an injunction against the city. *Kaczmarek Prosecuting Attorney ex rel Teamsters Local 129 v City of Saginaw* (Docket No. 81-16555-AZ-FY-1) (hereinafter *Kaczmarek*). The complaint, filed on August 27, 1981, requested that the city be enjoined from implementing the unpaid-day-off program in violation of 1935 PA 78 (MCL 38.501 *et seq.;* MSA 5.3351 *et seq.).* The defendant City of Saginaw filed a motion for summary judgment pursuant to GCR 1963, 117.2(1), claiming that the plaintiff had failed to state a claim upon which relief could be granted. The hearing on the defendant's motion was held on October 13, 1981, before Saginaw County Circuit Court Judge Robert Gilbert. The court granted the defendant's motion, finding that the plaintiff had not alleged a violation of the provisions of 1935 PA 78 because, although the officers' hours of work had been reduced, there had been no reduction of the number of paid members of the police force.

Thereafter, on November 12, 1981, the city filed a complaint in Saginaw County Circuit Court to vacate the arbitration award. The case was assigned to Judge Gilbert. In an opinion dated December 30, 1982, Judge Gilbert held that the arbitration award must be confirmed. Regarding the applicability of the court's previous decision in *Kaczmarek,* Judge Gilbert stated:

"In Article XIII, § 1, Step 5 the parties hereto agreed that the award of the arbitrator should be final and binding. Based upon this agreement this court cannot substitute its own view of Act 78 for that of the arbitrator. The court is of the opinion that even though its view of Act 78 is different than that of arbitrator Walt

it is incumbent upon this court to confirm the award, there being no showing of fraud or mistake."

The court further held that the arbitrator did not exceed his jurisdiction, as the decision was drawn from the essence of the contract and did not demonstrate a manifest disregard of the law or of any strong public policy. Accordingly, an order was entered confirming the arbitrator's award, from which the city appeals as of right.

On appeal, plaintiff first maintains that the circuit court failed to apply an appropriate standard of review to the arbitrator's decision. According to plaintiff, the court should not have deferred to the arbitrator's interpretation of MCL 38.514; MSA 5.3364.

The United States Supreme Court set forth the parameters for judicial review of arbitrators' decisions in the *Steelworkers* trilogy. *United Steelworkers of America v American Mfg Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960); *United Steelworkers of America v Warrier & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960). The Michigan Supreme Court adopted the federal standard in *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers Ass'n,* 393 Mich 583, 591; 227 NW2d 500 (1975). This standard was neatly summarized by the Court in *Ferndale Ed Ass'n v Ferndale School Dist,* 67 Mich App 637, 642-643; 242 NW2d 478 (1976):

"Questions concerning the scope of judicial review of arbitrability and the awards made by arbitrators in labor disputes have been almost a plague on both state and Federal courts for years, but the eminently proper

attitude that we have taken is one of 'hands off'. The party that ends up holding the short end of the arbitrator's award may try desparately to fit the facts within the narrow doorway to the courts, but the judicial policy is clear. In the *Steelworkers* trilogy, the United States Supreme Court held that the merits of either the grievance or the arbitration award are *irrelevant* when a Federal court is asked to enforce an arbitration agreement or award thereunder. Judicial review is limited to whether the award 'draws its essence' from the contract, whether the award was within the authority conferred upon the arbitrator by the collective bargaining agreement. Once substantive arbitrability is determined (as it was in the court below) judicial review effectively ceases. *The fact that an arbitrator's interpretation of a contract is wrong is irrelevant.*" (Footnotes omitted; emphasis added.)

Citing *DAIIE v Gavin,* 416 Mich 407; 331 NW2d 418 (1982), plaintiff claims that a reviewing court may vacate an arbitration award if the arbitrator has made an outcome-determinative mistake of law. *Gavin* is distinguishable. In this case, based on the reasons stated herein, the arbitrator did not make an outcome-determinative mistake of law.

Plaintiff next argues that because the arbitrator was interpreting a statute, the arbitrator's interpretation does not prevail over a court's interpretation of the statute. Plaintiff relies on *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974). In *Gardner-Denver,* an employee filed a grievance, claiming his discharge violated the just-cause and nondiscrimination clauses of the collective-bargaining agreement. The arbitrator denied the relief requested in the grievance, ruling that the employee's discharge was for cause, without making reference to the employee's claim of racial discrimination. Thereafter, the employee instituted a civil action in federal district

court under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* The district court held that the employee, having elected to pursue his grievance under the collective-bargaining agreement, was bound by the arbitral decision and was thereby precluded from suing his employer under Title VII. The federal appeals court affirmed. The Supreme Court reversed, holding that an employee's statutory right to trial *de novo* under Title VII of the Civil Rights Act of 1964 was not foreclosed by the employee's prior submission of his claim of a racially discriminatory discharge to binding arbitration under the nondiscrimination clause of the collective-bargaining agreement. 415 US 49-50. The Supreme Court concluded that the doctrine of election of remedies did not preclude the employee from maintaining an action under Title VII, because arbitral remedies and Title VII remedies are not inconsistent. Rather, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue his independent rights under Title VII and other applicable state and local statutes. 415 US 48-49.

Plaintiff argues that *Gardner-Denver* stands for the proposition that a court's interpretation of a statute prevails over an arbitrator's interpretation, citing the Supreme Court's statement: "If an arbitral decision is based 'solely upon the arbitrator's view of the requirements of an enacted legislation' rather than on an interpretation of the collective bargaining agreement, the arbitrator has 'exceeded the scope of his submission,' and the award will not be enforced." 415 US 53.

The differences between the instant case and *Gardner-Denver* are readily apparent. In the instant case, plaintiff did not initiate an independent civil action, pursuant to a statutory scheme, for

judicial consideration of its rights; rather, it filed a complaint to have a binding arbitration award vacated. Thus, plaintiff was not seeking judicial consideration of rights separate from those considered by the arbitrator in resolving the contractual dispute. Additionally, unlike the collective-bargaining agreement in *Gardner-Denver,* the instant agreement incorporates the terms of that statute. By specifically incorporating the terms of the statute into the contract, the parties empowered the arbitrator to interpret the statute. Statutory interpretation became integrated with contractual interpretation.

Also distinguishable is *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663; 293 NW2d 278 (1980), holding that the Michigan Employment Relations Commission (MERC) could not defer to arbitration the resolution of public contract grievance disputes after its jurisdiction had been invoked. This dispute involves no conflict with MERC's jurisdiction. See *Detroit Police Officers Ass'n v Detroit,* 114 Mich App 275, 281-282, fn 2; 318 NW2d 650 (1982), *lv den* 417 Mich 871 (1983).

The circuit court employed the correct standard of review, and plaintiff's efforts to expand or circumvent this standard are ineffectual.

Plaintiff next claims that the arbitrator's award should be vacated because the unpaid-day-off program was not an arbitrable issue under the terms of the contract.

Plaintiff first argues that the dispute was not arbitrable because defendant waived arbitration by electing to proceed under Act 78. Article XIII, Step 4, provides: "Prior to submission of the grievance at this level, the grievant shall elect whether he desires to proceed under Act 78 or, under the grievance article, to arbitration". Both the circuit

court and defendant state that the parties agreed to submit the dispute to arbitration on June 12, 1981. The arbitrator's decision does not indicate when defendant decided to proceed to Step 5 and request arbitration. However, plaintiff's post-hearing arbitration brief also indicates that on June 12, 1981, the parties agreed to submit the matter to arbitration pursuant to the terms of the collective-bargaining agreement. This indicates two things. First, defendant did elect to proceed under the collective-bargaining agreement and any further action by defendant under Act 78 would have merely been a defense in the *Kaczmarek* action. Second, it appears that plaintiff participated in the arbitration hearing without raising the issue of the substantive arbitrability of the dispute. This may constitute a waiver of plaintiff's right to subsequently challenge arbitrability after the ultimate resolution of the dispute. *Saginaw v Saginaw Firefighters Ass'n,* 130 Mich App 401, 407; 343 NW2d 571 (1983).

The next issue is whether the circuit court correctly determined that the dispute over the unpaid-day-off program was a proper subject for arbitration under the collective-bargaining agreement. Once this question is answered affirmatively, "judicial review effectively ceases". *Ferndale, supra,* p 643. While a question concerning the substantive arbitrability of a dispute is a matter for a court, "the judicial inquiry 'is confined to ascertaining whether the party seeking arbitration is making *a claim which on its face* is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.' " *Kaleva-Norman-Dickson, supra,* p 591, quoting *American Mfg Co, supra,* 363 US 568 (emphasis in *Kaleva*).

Under this standard, the dispute in the instant case is "on its face" governed by the contract. Article XIII provides for a multi-step grievance procedure culminating in final and binding arbitration for "matters involving the interpretation, application or enforcement of the terms" of the agreement. Article VII mandates that layoffs shall be made under the provisions of Act 78. Section 14 of Act 78 provides that "[i]f for any reasons of economy it shall be deemed necessary by a city, village or municipality to *reduce* the number of paid members of any fire or police department, then said municipality shall follow the following procedure". (Emphasis added.) MCL 38.514; MSA 5.3364. Under the unpaid-day-off program, the work hours of the employees were reduced by one day each month. The question of whether the unpaid-day-off program was a "reduction" or a "layoff" in violation of Article VII, which incorporated by reference the provisions of Act 78, was a proper subject for arbitration, as the claim "on its face" is governed by the contract. Further, since there was no express provision excluding defendant's grievance from arbitration, the circuit court correctly determined that the dispute was arbitrable. *Kaleva, supra,* p 592.

Plaintiff also maintains that the award should have been vacated because the arbitrator exceeded his jurisdiction, and because the award offended public policy. We reject both arguments. The crux of plaintiff's "jurisdictional" argument is that, since the arbitrator did not follow Judge Gilbert's decision in *Kaczmarek,* he ignored judicial interpretation of Act 78 and therefore altered the established meaning of the contract. As we have observed, however, the arbitrator's interpretation of Act 78 was an integral part of his construction

of the contract; and, under the proper scope of review as discussed *supra,* the courts are not free to substitute their judgment for that of the arbitrator in this matter. Because Act 78 was incorporated into the contract, the arbitrator was not bound by Judge Gilbert's interpretation of the statute. The arbitrator found that, as utilized in the labor agreement, the word "layoff" extends to all work-force reductions which are not disciplinary, that is, those which are not imposed "for cause" and are the result of economic need. Therefore, in the arbitrator's opinion, the unpaid-day-off program was a work-force reduction within the meaning of § 14 of Act 78. In reaching this decision, the arbitrator interpreted all the provisions of the collective-bargaining agreement. The arbitrator also found that the unpaid day off would create a variance in the normal workweek as established by Article VII, § 1, would result in losses in overtime pay as established in Article VII, § 3, and would result in a unilateral change in the basic shift provisions of Article VII, § 5, and a unilateral reduction in the annual salary reflected in Article XXIV, § 1. It is not our function, nor that of the trial judge, to deliberate upon whether this interpretation was erroneous. Because the award clearly drew its essence from the contract, the trial court properly declined to disturb it.

The second prong of plaintiff's argument is that the award violated public policy, because it essentially requires plaintiff to lay off police officers in order to survive its financial crisis.

An exception to the general rule of judicial deference to arbitrators' awards is that a court may decline to enforce an award that is contrary to public policy. *Fraternal Order of Police v Bensinger,* 122 Mich App 437, 446-448; 333 NW2d 73

(1983), *lv den* 418 Mich 853 (1983). The exception does not apply here, as the award itself does not mandate work-force reductions. The award holds that the city has violated the collective-bargaining agreement by requiring bargaining-unit members to forfeit one paid work day each month. Therefore, the city was ordered to cease and desist from such scheduling and pay each member of the bargaining unit for each work day lost since the implementation of the unpaid-day-off program. If plaintiff now decides it must lay off police officers for pecuniary reasons, that it its decision, not that of the arbitrator.

Finally, plaintiff's contention that the arbitration proceeding was barred by the circuit court's proceeding in *Kaczmarek* on the grounds of res judicata is meritless. See *Auto-Owners Ins Co v Higby,* 69 Mich App 485; 245 NW2d 102 (1976), *lv den* 397 Mich 881 (1976).

Affirmed.