LANSING COMMUNITY COLLEGE v LANSING COMMUNITY
COLLEGE CHAPTER OF THE MICHIGAN ASSOCIATION FOR
HIGHER EDUCATION

Docket No. 90849. Submitted December 17, 1986, at Lansing. Decided
July 7, 1987. Leave to appeal applied for.

Ronald P. Byrum was discharged from his position as associate
professor of psychology at Lansing Community College. By-
rum's union, Lansing Community College Chapter of the Michi-
gan Association for Higher Education, filed a grievance con-
tending that Byrum's dismissal for allegedly smoking mari-
juana with students from his class at his residence was not
supported by just cause, as required by the collective bargain-
ing agreement. The matter was submitted to binding arbitra-
tion. The arbitrator found that Byrum had smoked marijuana
with some of his students as alleged, but that such conduct was
not so grave a violation of his professional obligations as to
constitute just cause for dismissal. Lansing Community College
filed an action in Ingham Circuit Court, seeking to vacate the
arbitrator's award. The court, James T. Kallman, J., granted
summary disposition in favor of plaintiff and vacated the
arbitrator's award, ruling that the award was beyond the
arbitrator's authority under the collective bargaining agree-
ment and that it was contrary to public policy. Defendant labor
union appealed.

The Court of Appeals *held:*

1. The circuit court exceeded its scope of review of the
arbitrator's award. In reviewing the award, the circuit court
was limited to deciding whether the arbitrator acted within her
authority as provided by the parties' collective bargaining
agreement. The parties had bound themselves to abide by the
arbitrator's interpretation of the agreement including its provi-

REFERENCES

Am Jur 2d, Arbitration and Award §§ 29 *et seq.*; 145, 167 *et seq.*

Construction and application of Section 10(a-d) of United States
Arbitration Act of 1947 (9 USCS § 10(a-d)), providing grounds for
vacating arbitration awards. 20 ALRFed 295.

See also the annotations in the Index to Annotations under Arbitra-
tion and Award.

sion for dismissal for just cause. The trial court's failure to defer to the arbitrator's interpretation was error.

2. The arbitrator's conclusion that Byrum's conduct constituted just cause for a suspension without pay but not dismissal does not violate the well-defined public policy against the use of illegal narcotics. The arbitrator merely interpreted the agreement as providing violators such as Byrum a second chance at employment following the imposition of a form of punishment less severe than permanent discharge.

Reversed and remanded.

1. ARBITRATION — COLLECTIVE BARGAINING — JURISDICTION.

An arbitrator's jurisdiction and authority to resolve a particular dispute concerning the appropriate interpretation of a collective bargaining agreement derives exclusively from the agreement.

2. ARBITRATION — COLLECTIVE BARGAINING — APPEAL.

A court, when reviewing an arbitrator's award in a dispute submitted to the arbitrator pursuant to the parties' collective bargaining agreement, may not review the arbitrator's factual findings or his decision on the merits; rather, the court may only decide whether the award draws its essence from the collective bargaining agreement; if the arbitrator did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the collective bargaining agreement, judicial review effectively ceases.

3. ARBITRATION — ARBITRATION AWARDS — APPEAL — PUBLIC POLICY.

A court, when reviewing an arbitrator's award, may overturn the award if the underlying contract, as interpreted by the arbitrator, violates a well-defined and dominant public policy; additionally, an award which itself violates such a public policy may be vacated by the reviewing court; in determining if an award itself violates public policy, the court must consider each case on its own set of facts and pay special attention to the actual ramifications of the award, which must not be contrary to the public interest protected by the public policy at issue.

*MacLean, Seaman, Laing & Guilford* (by *Charles R. MacLean*), and *Vedder, Price, Kaufman & Kammholz* (by *Robert C. Claus, Paul F. Gleeson* and *Bruce R. Alper*), Attorneys of Counsel, for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *James A. White* and *David J. Houston*), for defendant.

Before: M. J. Kelly, P.J., and Sullivan and D. R. Carnovale,* JJ.

Sullivan, J. Defendant Lansing Community College Chapter of the Michigan Association for Higher Education appeals as of right from an opinion and order of the Ingham Circuit Court which vacated an arbitration award. We reverse.

Ronald P. Byrum, a member of the defendant association, was employed by plaintiff Lansing Community College as an associate professor of psychology from 1975 until May 15, 1984, when he was discharged primarily for allegedly smoking marijuana with his students at his condominium. Through the defendant, his bargaining representative, Byrum filed a grievance contesting his discharge pursuant to the terms of the parties' collective bargaining agreement. Byrum alleged, inter alia, that the college discharged him without "just cause" in violation of Article VI.T.1 of the agreement, which states, "No faculty member shall be reprimanded, demoted, or discharged without just cause."[1]

Pursuant to the grievance procedure, the dispute was submitted to an arbitrator, who received the following evidence: In November, 1983, W. Heater, chairperson of the social science department at the community college, received an anonymous letter from one of Professor Byrum's students. The letter informed Heater that Byrum had distributed drugs

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] Professor Byrum also alleged that his discharge violated VI.T.2 of the agreement, which required that the college give "due process" notice to faculty members of complaints filed against them. This claim was rejected by the arbitrator, and is not at issue on this appeal.

in a psychology class and conducted "bazaar [sic] pot parties disguised as a college class."

Consequently, C. Alvarado, an undercover Lansing police officer, enrolled in Professor Byrum's Altered States of Consciousness class, which began in January, 1984. Alvarado testified that during the last week of February, 1984, Byrum informed the class that the next meeting would be held in his condominium. Apparently, Byrum also told Alvarado that marijuana would be distributed at that class.

Alvarado attended the next "class" at Byrum's condominium during the evening of March 4, 1984, with J. Martin, an Eaton County deputy sheriff. Alvarado testified that both Byrum and his students were smoking marijuana from a pipe and that Byrum even offered a student his own pipe, containing a "special blend." Eventually, Alvarado and Martin signalled a surveillance crew stationed outside to enter and secure Byrum's arrest.

S. Abdo, a member of the surveillance crew, testified that Byrum admitted to him that all the marijuana at the party belonged to him, rather than to the students. However, at the hearing, Byrum denied that any marijuana was smoked in his presence. He testified that he tried to dissuade his students from smoking the pipes, as he suspected the pipes contained marijuana. He claimed that neither of the pipes confiscated belonged to him.[2]

The arbitrator issued her opinion and order on September 3, 1985, in which she found that Byrum committed the marijuana-related offenses with which he was charged, and did so under work-related conditions. However, she further found

[2] Byrum was tried in Ingham Circuit Court in August, 1984, on charges of distribution, possession, and use of marijuana. He was acquitted on all three counts.

that Byrum's conduct was not so grave a violation of professional obligations as to constitute just cause supporting the sanction of discharge. In arriving at this conclusion, the arbitrator considered several mitigating factors, including Byrum's good record with the college, the facts that the students enrolled in the college are adults who are not necessarily influenced by Byrum's personal conduct and that Byrum "condoned" rather than "advocated" marijuana, the college's failure to promulgate rules on faculty drug use, and the college's approval of the course.[3] The arbitrator determined that dismissal was too harsh a penalty, and awarded Byrum reinstatement without back pay. The fifteen months lost by Byrum prior to the order was considered a disciplinary suspension.

The plaintiff college thereafter filed a complaint in the Ingham Circuit Court, seeking to vacate the arbitrator's award. Defendant filed an answer and counterclaim for enforcement of the award. Subsequently, the circuit court entered summary disposition in favor of the college and vacated the award. The basis for the circuit court's decision is twofold: that the award was beyond the arbitrator's contractual authority and contrary to public policy. We will address these issues seriatim.

I

The first issue is whether the circuit court erred in vacating the award upon the basis that the award was beyond the contractual authority of the arbitrator.

Labor arbitration is, of course, a product of contract and an arbitrator's authority to resolve a dispute arising out of the appropriate interpreta-

---

[3] The arbitrator reasoned that, since the college approved the course, it must have suspected from the course's title what it entailed.

tion of a collective bargaining agreement is derived exclusively from the contractual agreement of the parties. *Port Huron Area School Dist v Port Huron Ed Ass'n,* 426 Mich 143, 150-151; 393 NW2d 811 (1986). Consequently, it is well settled that judicial review of an arbitrator's decision is limited; a court may not review an arbitrator's factual findings or decision on the merits. *Id.* at 150. Rather, a court may only decide whether the arbitrator's award "draws its essence" from the contract. If the arbitrator, in granting the award, did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the arbitration contract, judicial review effectively ceases. *Ferndale Ed Ass'n v School Dist for City of Ferndale #1,* 67 Mich App 637, 642-643; 242 NW2d 478 (1976); *Port Huron Area School Dist, supra* at 151.

Here, in vacating the arbitration award, the circuit court stated in pertinent part:

> Apart from, and independent of the public policy rationale, the Court believes the Arbitrator exceeded her authority as well. The clear implication of Art VI.T.1 is that the College, by the language of the CBA [collective bargaining agreement], retained the authority and discretion to terminate an employee as long as it was for just cause. The retention of that authority is a term of the CBA which Arbitrator Kahn was required to adhere to. There is no question that the type of criminal conduct which Arbitrator Kahn found Prof. Byrum to have engaged in would be sufficient cause for discharge. Consequently, the Court believes that she erred and exceeded her authority by finding that even though he was involved in such conduct, discharge was not justified.

Article VI.T.1 of the agreement, to which the court referred, states in part: "No faculty member

shall be reprimanded, demoted, or discharged without just cause." Article VIII.C.4.a provides that any grievance, not previously resolved, may be submitted to an arbitrator. Article VIII.A.1 defines a grievance as "an alleged violation, misinterpretation, or misapplication of a specific article or section of this agreement and/or the board's personnel policies." Article VIII.C.4.b provides:

> The power of the arbitrator shall be limited to the interpretation or application of this agreement, and he/she shall have no power to alter, add to, or subtract from the terms of this agreement as written. The decision of the arbitrator shall be binding on all parties involved.

Professor Byrum's grievance charged an alleged violation of Article VI.T.1, the just cause provision. The arbitrator determined that the misconduct did not constitute just cause for dismissal and, thus, acted pursuant to her power described in Article VIII.C.4.b, above, to "interpret and apply the agreement." The arbitrator was not prohibited from considering mitigating factors in arriving at her conclusion and did not exceed her contractual authority in doing so.[4]

Moreover, in finding to the contrary, the circuit court relied on its own interpretation of the collective bargaining agreement and its own conclusion that the marijuana-related activities did constitute just cause for dismissal. In making its own just cause determination, the circuit court exceeded its

---

[4] This case is therefore distinguishable from *Bd of Control of Ferris State College v Michigan AFSCME Council 25, Local 1609,* 138 Mich App 170; 361 NW2d 342 (1984), discussed by the parties, where this Court held that an arbitrator exceeded his contractual authority by reinstating a grievant after expressly finding that just cause existed for dismissal. The *Ferris State College* panel, in fact, distinguished cases such as the present case, where the arbitrator found no just cause for dismissal because the penalty was too great. *Id.* at 178.

authority. As stated, judicial review of a labor arbitration award is very limited and the reviewing court must not substitute its judgment for that of the arbitrator in questions of contract interpretation. *Port Huron Area School Dist, supra; Kaleva-Norman-Dickson School Dist No 6 Cos of Manistee, Lake & Mason v Kaleva-Norman-Dickson Teachers Ass'n,* 393 Mich 583, 595; 227 NW2d 500 (1975). In reviewing the award, the circuit court was limited to deciding whether the arbitrator acted within her authority. The court's failure to defer to the arbitrator's interpretation of the agreement was error. The parties bargained for the arbitrator's construction of the just cause provision of the contract and, subject to the discussion ahead, they are bound by it.

II

The second issue is whether the circuit court erred in vacating the arbitrator's award upon the alternative basis that it violated public policy. Although this jurisdiction does recognize a public policy exception to the usual deference given to an arbitrator's award, we are not persuaded that the instant award violated public policy.

In *W R Grace & Co v Local 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 US 757, 766; 103 S Ct 2177; 76 L Ed 2d 298 (1983), the United States Supreme Court recognized that an arbitration award may indeed be vacated as being violative of public policy:

> As with any contract, however, a court may not enforce a collective-bargaining agreement that is contrary to public policy . . . . [The arbitrator's] view of his own jurisdiction precluded his consideration of this question, and, in any event, the

question of public policy is ultimately one for resolution by the courts . . . . If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it . . . . Such a public policy, however must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interest. [Citations omitted.][5]

*City of Saginaw v Michigan Law Enforcement Union, Teamsters Local 129,* 136 Mich App 542; 358 NW2d 356 (1984), appears to be the sole Michigan decision in which the arbitrator's award was objected to as being violative of public policy.[6] There, the arbitrator enjoined the city from continuing to require police officers represented by the Teamsters union to forfeit one paid work day per month, and ordered the city to pay each member of the bargaining unit for the work days lost due to this practice. The city sought to have this award vacated as a violation of public policy, claiming that it would force the city, which was

[5] Michigan courts, of course, in construing provisions and ramifications of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* frequently look to decisions of federal courts which construe and apply the National Labor Relations Act. See *Kaleva-Norman-Dickson, supra.*

[6] In *Fraternal Order of Police, Ionia Co Lodge No 157 v Bensinger,* 122 Mich App 437; 333 NW2d 73 (1983), lv den 418 Mich 853 (1983), this Court recognized the public policy exception to the otherwise narrow standard of review of an arbitrator's decision. However, the *Bensinger* Court found the exception inapplicable in the case before it because the party challenging the award had alleged that the arbitrator's findings of fact and conclusions of law, rather than the award itself, had violated public policy. *Id.* at 447-448. In *City of Sagniaw v Firefighters Ass'n Local 422, IAFF, AFL-CIO,* 130 Mich App 401; 343 NW2d 571 (1983), the panel similarly determined that the public policy exception was inapplicable because the award was not objected to as violating public policy. This latter panel, consequently, refused to review to the objecting party's claim that the arbitrator improperly modified the collective bargaining agreement and failed to give effect to all the language of an ordinance allegedly relevant to the dispute. *Id.* at 407-408.

suffering from financial difficulties, to lay off police officers. This Court concluded that the award did not violate public policy because the award itself did not mandate work force reductions. The Court explained that, if the city "now decides it must lay off police officers for pecuniary reasons, that [is] its decision, not that of the arbitrator." *Id.* at 558.

Because no case within this jurisdiction has vacated an arbitrator's award as violative of public policy, the parameters of the exception are unclear. Defendant maintains the exception would apply only where the arbitrator affirmatively orders a party to commit an illegal act. Defendant consequently reasons that the exception would be inapplicable to the instant facts because the action which the award mandates, reinstating Professor Byrum, is not contrary to law. By contrast, plaintiff asserts that the award was contrary to the well-defined public policy against illegal drug use, particularly that by a teacher with his students.

Defendant's argument is supported by a recent case decided by the United States Court of Appeals for the District of Columbia. In *American Postal Workers Union, AFL-CIO v United States Postal Service,* 789 F2d 1 (DC Cir, 1986), the court reversed a judgment by the district court which had vacated an arbitration award. The appellate court held, inter alia, that the award, which reinstated an employee who was discharged for allegedly misappropriating company funds, was not against public policy. Noting the narrow definition of the public policy exception set forth by *W R Grace,* the *American Postal Workers* court concluded:

> There is surely no doubt that the instant case does not pose a situation requiring the invocation of a public policy exception. The arbitrator's award was not itself unlawful, for there is no legal pro-

scription against the reinstatement of a person such as the grievant. And the award did not otherwise have the effect of mandating any illegal conduct. In other words, even if the arbitrator's view of *Miranda* [*v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 644; 10 ALR3d 974 (1966)] was wrong, his decision to exclude the grievant's statements did not in any manner violate the law or cause the employer to act unlawfully. In addition, and most importantly, the grievance plainly raised an arbitrable issue; the arbitrator was properly designated and authorized to hear the case; and the arbitral judgment rested on an interpretation of the contract. [789 F2d 8.]

*American Postal Workers,* however, appears to represent the minority view among the federal circuits. In *E I DuPont de Nemours & Co v Grasselli Employees Independent Ass'n of East Chicago, Inc,* 790 F2d 611 (CA 7, 1986), cited by the college, the Seventh Circuit affirmed a judgment of the district court which vacated an arbitration award granting reinstatement to an employee who attacked his supervisor and destroyed company property following a nervous breakdown. Rejecting the notion that the award did not violate public policy because the reinstatement was not contrary to law, the court reasoned:

The concurrence argues that an arbitration award cannot be overturned on public policy grounds unless the contract as construed by the arbitrator violates some rule of positive law. More precisely, in the context of the review of an arbitration award which orders the reinstatement of an employee because there was no just cause to terminate that employee, the concurrence argues that so long as the reinstatement of that employee does not violate any rule of positive law, the award cannot be overturned on the ground of public policy. However, the courts have never construed

the public policy exception so narrowly. An employer who employs someone who has used drugs does not violate any rule of positive law, yet the Fifth Circuit overturned an award which ordered the reinstatement of an employee who was smoking marijuana on company premises, because the award violated public policy. *Misco [Inc v United Paperworkers Int Union]*, 768 F2d [739], 742-43 [(CA 5, 1985)]. An employer who employs a truck driver who admittedly drank while on duty does not violate any rule of positive law, yet the Fifth Circuit overturned an award which ordered the reinstatement of such an employee, because the award violated public policy. [*Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO, Local 540 v Great Western Food Co*, 712 F2d 122, 124-25 (CA 5, 1983)]. If the Postal Service employs a convicted embezzler, this employment does not violate any rule of positive law, yet the First Circuit overturned an award which ordered the reinstatement of such an employee, because the award violated public policy. [*United States Postal Service v American Postal Workers Union, AFL-CIO*, 736 F2d 822, 825-26 (CA 1, 1984)]. In this last case, the union raised precisely the same argument that is proffered by the concurrence today: Even if there is a public policy against embezzling Postal Service funds, there is no public policy against the Postal Service employing convicted embezzlers, and to overturn an award on public policy grounds "[y]ou have to have something more—a direct legal prohibition." *Id.* at 824. Yet the First Circuit explicitly rejected such a requirement. *Id.* See generally [R. Gorman, *Labor Law-Unionization and Collective Bargaining*, p 597 (1976)] ("when the award, although not requiring illegal conduct, is said to be inconsistent with some significant public policy," the award may be overturned.) [*Id.* at 616.]

The cases cited by the *DuPont* court obviously construe the public policy exception in a much broader manner than did the *American Postal*

*Workers* court. Although we do not necessarily believe that the award itself need be unlawful or have the effect of mandating illegal conduct before the exception may be invoked, *American Postal Workers, supra,* we likewise are unable to reconcile such a broad application of the exception with the decision and rationale of the *W R Grace* opinion, *supra.*

Rather, we are of the opinion that, complying with the requirements of *W R Grace,* a reviewing court may overturn an award if the underlying contract, as interpreted by the arbitrator, violates a well-defined and dominant public policy. Additionally, an award which itself violates such a public policy may be vacated by the reviewing court. In determining if an award itself violates public policy, the court must consider each case on its own set of facts and must pay special attention to the actual ramifications of the award, which must not be contrary to the public interest protected by the public policy at issue. Here, the arbitrator interpreted the collective bargaining agreement and found that Professor Byrum's conduct constituted just cause to support a suspension without pay but not the sanction of permanent dismissal. Contrary to the circuit court's holding, neither the agreement, as so interpreted, nor the award violates the well-defined public policy against the use of illegal narcotics. The arbitrator merely interpreted the agreement as providing violators such as Professor Byrum a second chance at employment following the imposition of a form of punishment less severe than permanent discharge. Based on the facts of the case, the arbitrator obviously found that Professor Byrum was still capable of teaching at the community college level. We are unpersuaded that Byrum's return to the college is contrary to public interest. Any other

holding would be based upon a general consideration that similar violators might never again be worthy of pursuing their chosen profession. Such a supposed public interest, *W R Grace, supra,* is, of course, an insufficient basis upon which to invoke the public policy exception.

Reversed and remanded for further proceedings not inconsistent with this opinion.